JENSEN, JUHL & HENSEN v. ABSALOM HALLAM.

FILED MAY 5, 1897. No. 7258.

**Wrongful Attachment: EXCESSIVE DAMAGES.** The evidence in this case considered, and *held* to show that the damages are excessive.

ERROR from the district court of Douglas county. Tried below before OGDEN, J. *Affirmed conditionally.*

*Foster & Boucher,* for plaintiffs in error.

*Gregory, Day & Day, contra.*

RYAN, C.

This action was brought in the district court of Douglas county by the defendant in error for the recovery of damages alleged to have been sustained by the levy of an attachment procured to be issued upon the willfully false affidavit of the plaintiff in error that the defendant had assigned, removed, and disposed of, and was about to dispose of, his property, or a part thereof, with intent to defraud his creditors. The property levied on was a black horse, and it was alleged in the petition that, without any service of summons, and without any appearance for the defendant in the attachment suit, a judgment had been rendered, upon which an order of sale had issued, and that by virtue thereof said horse had been sold. For the value of this horse, laid at $100, a part of the claim for damages in this case was made. The remaining element of damages claimed was in the petition described in this language: "And this plaintiff further alleges that the plaintiff at the time was engaged in the business of representing the National Supply Company of Chicago, and enjoying the confidence, the faith, and esteem of his acquaintances and his employers, and men engaged in business generally, who knew him; that by reason of said false, willful, and malicious state-

ments aforesaid, and the suing out of said attachment, his good name, business integrity, and personal honesty has been brought in question, and he has been put to great trouble and loss of time and expense thereby, and has suffered in his business reputation loss and damage in the sum of $1,000." There was accordingly a prayer for judgment in the sum of $1,100. There was sufficient evidence to justify the jury in finding that the attachment was wrongfully sued out; that the appearance for the purpose of dissolving the attachment was without authority, and that the horse sold was of the value found in the verdict. There was no proof offered as to other damages than the value of the horse, except the testimony of the defendant in error, which was as follows:

Q. Now, Mr. Hallam, with regard to the attachment, you may state whether or not it caused you any annoyance or otherwise.

A. It did.

Q. State in what manner.

A. In the manner that people knew the horse that I was acquainted with; they were always asking me what I had done with my horse; if I had sold him, or what I had done with him; and to tell them that it was taken under an attachment would be very embarrassing, and I didn't want to lie about it, and the consequence was it left me in bad shape, and I had to always try to evade answering as to how I got rid of the horse. Not longer ago than the day before yesterday I was asked, 'What did you do with the little black horse?' and it was very embarrassing for a thing of that kind to slip out of your hands in this way.

Q. In what other respects, if any, did you suffer?

A. Well, the annoyance of attending a suit to defend myself, and to pay out attorney's fees. It is quite an annoyance to a man to spend his time in this way.

Omitting the merely formal parts, the verdict of the jury was in this language:

"We, the jury, duly impaneled and sworn to try the

issue joined between the said parties, do find for said plaintiff and assess the amount of damages due said plaintiff as follows:

"For value of horse......................... $75 00

"For int. at 7 per cent on above value from Oct. 6, 1891, to May 1, 1893.................... 8 24

"Total for horse....................... $83 24

"Amount for loss of reputation and humiliation ................................. 500 00

"Total ............................. $583 24

"F. M. MARSH, *Foreman.*"

Judgment was rendered for the above aggregate sum of $583.24.

General damages are such as the jury may give when the judge cannot point out any method by which they are to be ascertained, except the opinion and judgment of a reasonable man. (*Bank of Commerce v. Goos,* 39 Neb., 437.) The testimony of Mr. Hallam discloses that he had been frequently annoyed by inquiries as to what he had done with his horse; that it would have been very annoying to answer that it had been seized and sold by virtue of an attachment, and, very properly, he did not want to lie about it. He says these conditions surrounding the question left him in very bad shape, necessitating on his part the giving of an evasive answer. This is all there is of his testimony that bears upon this question, for we understand the observation that "it was very embarrassing for a thing of that kind to slip out of your hands" to refer to something tangible,—perhaps, in this instance, to the horse, for the value of which there was a special finding, followed by a corresponding recognition of a right to recover to that extent. Mr. Hallam did not state how he tried to evade the question as to what he had done with his horse, neither did he say how successful was his attempted evasion. There is no evidence that by reason of this attachment his credit was

Jensen v. Hallam.

injured in any respect whatsoever. While we should feel bound by the verdict of the jury to any reasonable amount of damages in a proper case, it strikes us that the amount allowed for the loss of reputation and humiliation shown in this case was out of all proportion. We cannot arbitrarily fix a figure as that which the jury might have adopted. We shall permit the verdict to stand for the value of the horse and interest thereon as found by the jury if the defendant in error shall elect to accept that amount in full settlement of his entire claim.

In the petition in the district court it was alleged that the defendant was a copartnership. The defendant answered denying that, at the time of filing the answer (June 20, 1892), or at any time since January 1, 1892, it was, or had done business as, a partnership. In argument it is now urged that, since it was shown by the evidence that the firm, after the recovery of its judgment in the attachment case, had dissolved on January 1, 1892, no action arising out of such attachment suit could be subsequently maintained against the partnership. There is nothing in these averments of the answer to take this case out of the general rule laid down in 17 American & English Encyclopedia of Law, page 1137, that "a partnership, notwithstanding its dissolution, continues to exist so far as may be necessary for the winding up of its business."

There is no other question presented by the record. If within forty days from the filing hereof the defendant in error shall file in this court a remittitur of the sum of $500, with such interest as at that time shall have accrued on said $500, the judgment of the district court will be affirmed, otherwise this cause will be reversed and remanded for further proceedings.

JUDGMENT ACCORDINGLY.