SCOULAR-BISHOP GRAIN CO., A NEBRASKA CORPORATION,
APPELLANT, V. BASSETT GRAIN, INC., A NEBRASKA CORPORATION,
APPELLEE.
352 N.W.2d 904

Filed August 10, 1984.    No. 83-481.

John C. Schraufnagel of Cronin, Hannon & Symonds, for appellant.

John P. Heitz, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Plaintiff, Scoular-Bishop Grain Co., filed an action against defendant, Bassett Grain, Inc., seeking damages for amounts due under a lease agreement and a modification thereof. Bassett Grain, in its answer, admitted the execution of the agreements but denied it was indebted to Scoular-Bishop. Jury trial was waived and trial was had to the court. At the conclusion of all the evidence, the court found for Bassett Grain and dismissed the petition. Scoular-Bishop appeals, assigning as error the insufficiency of the evidence to support the court's decision in favor of Bassett Grain and alleging that the evidence required the court to find that Scoular-Bishop should recover on its amended petition. Appellant thus bases its appeal purely on an evidentiary basis. We believe the court disposes of the matter by its conclusions of law with regard to the construction of the contracts between the parties, and we affirm.

The terms of the lease and the modification thereof are not in dispute. On June 1, 1978, Bassett Grain, as lessor, leased a grain

elevator located at Long Pine, Nebraska, to Scoular-Bishop. Scoular-Bishop was to pay a basic, fixed amount of rent plus, as additional rent, an amount equal to 50 percent of the net operating income resulting from the operation of the leased elevator during each of Scoular-Bishop's fiscal years. The lease also provided that in the event there was a net operating loss for the fiscal year, that loss would be applied against any subsequent net income under the lease and that, at the termination of the lease, an adjustment would be made to reflect the total income and total losses; and if the losses exceeded the income, Bassett Grain would pay 50 percent of those losses to Scoular-Bishop.

When the June 1, 1978, lease was executed, Scoular-Bishop's fiscal year ended on April 30. During the first 2 fiscal years involving the lease (June 1, 1978, to April 30, 1979, and May 1, 1979, to April 30, 1980), there was operating income of approximately $28,000 and $190,000 yearly. Scoular-Bishop paid 50 percent of that income to Bassett Grain.

After the fiscal year ending April 30, 1980, Scoular-Bishop changed its fiscal year so that it would end on May 31. For the 13 months ending May 31, 1981, there was a net operating loss of over $164,000. The agreement between the parties ended on June 30, 1981.

On July 11, 1980, the parties executed another agreement. Bassett Grain was having financial difficulties and requested Scoular-Bishop to make certain payments to Bassett Grain's creditors rather than to Bassett Grain itself. Scoular-Bishop agreed to do so. Specifically, Scoular-Bishop agreed to pay three named creditors of Bassett Grain a total of over $171,000 in lieu of all rent due up to April 30, 1981, including both the basic monthly rent and the percentage rental based on net operating profits or losses. The July 11, 1980, agreement further provided, in paragraph 2 thereof,

2. Each of the foregoing payments [to the described creditors] by the Lessee [Scoular-Bishop] shall be deemed to be made by the Lessee on account of rent due and becoming due under the lease up to April 30, 1981 and shall be charged to and deducted from such rent. If the total amount of all of such payments shall be in excess of

the aggregate amount of rent due and becoming due under the Lease up to April 30, 1981, the Lessor [Bassett Grain] *shall not be liable for such excess or any part thereof.* (Emphasis supplied.)

This July 11, 1980, agreement also contained two other paragraphs which must be considered. Paragraph 5 states, "Except as modified by the provisions of this agreement, all of the terms and conditions of the Lease shall remain in full force and effect." Paragraph 8 provides, "This instrument constitutes the entire agreement and understanding of the parties with respect to the transactions contemplated hereby and supersedes any and all prior agreements and understandings relating to the subject matter hereof."

The two agreements described above were placed in evidence. Scoular-Bishop called two witnesses, the manager of the elevator and the secretary-treasurer of the company. Neither witness testified as to any matters concerning the relationship between the two agreements or the conflicting paragraphs 5 and 8 in the July 11, 1980, agreement. The secretary-treasurer did testify and gave proper foundation for two exhibits comprising the monthly computer runs showing, from Scoular-Bishop's books and records, the profit and loss for each month and year of the agreement between the parties. Bassett Grain did not present any evidence, and the matter was submitted to the trial court.

The trial court decided the matter by construing the July 11, 1980, agreement. At the conclusion of the trial, the court stated:

THE COURT: This agreement that was signed the 11th day of July, 1980, seems to indicate that everything is square between the parties on that date, and at paragraph 8 it says that this agreement constitutes the entire agreement and understanding of the parties with respect to the transactions contemplated herein and supersedes any and all prior agreements and understandings related to the subject matter hereof, so it would seem to me by that agreement you are at point zero in your accountings. It does provide that these specific payments that were to be made to the — that are outlined in paragraph 1, and

specifically to whom at (a), (b) and (c), and those payments are to be made through the month of April, and if the total amount of all such payments shall be in excess of the aggregate amount of rent due and becoming due under the lease up to April 30th, 1981, the lessor shall not be liable for such excess or any part thereof.

These observations were reflected in the court's journal entry, which stated that the court finds

That, by reason of the agreement of the parties received into evidence as Exhibit No. 2 [the July 11, 1980, agreement], the obligation, if any, of the Defendant for any deficit operations under the percentage rental provisions of the lease as of April 30th, 1981 was zero (0) as between the parties.

The trial court properly construed the July 11, 1980, agreement as a matter of law. As stated in *Don J. McMurray Co. v. Wiesman*, 199 Neb. 494, 498, 260 N.W.2d 196, 199 (1977), "When the terms of a contract and the facts and circumstances that aid in ascertaining the intent of the parties are insufficient to raise an issue of fact, the interpretation of the contract is a matter of law." In this case no evidence as to any facts and circumstances that would aid in ascertaining the intent of the parties was adduced before the trial court, and the interpretation of the contract was purely a matter of law. The court determined that paragraph 8 of the July 11, 1980, agreement controlled and that the second agreement completely supplanted the earlier agreement, referring to it only to incorporate certain language.

There is no assignment of error challenging this dispositive contract construction by the trial court. Neb. Ct. R. 9D(1)d (Rev. 1983) provides in part, "Each assignment of error shall be separately numbered and paragraphed, bearing in mind that consideration of the case will be limited to errors assigned and discussed." Here, the assignments of error are directed to the nature and sufficiency of the evidence. There is no assignment or discussion of the crucial conclusion of law made by the trial court.

We recognize we may note plain error not assigned, but there is no such error in this case. Plaintiff's petition, insofar as it

seeks damages up to April 30, 1981, was properly dismissed as a matter of construction of the July 11, 1980, agreement.

With regard to the period from May 1 to June 30, 1981, a different question is presented. In connection with these 2 months the trial court found that Scoular-Bishop presented no evidence to enable the court to "determine the amount of loss occasioned by the operation of the facility during those months." Again we agree with the trial court, recognizing that, in this area, the findings of the trial court where a jury is waived have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *White v. Medico Life Ins. Co.*, 212 Neb. 901, 327 N.W.2d 606 (1982). Noting just one fact on the computer run exhibit (exhibit 4) adduced by Scoular-Bishop points out the problem facing the court. As of June 30, 1981, the date of termination of the relationship between the parties, the exhibit shows an ending inventory of corn of $1,740,716.89, and of wheat, beans, milo, and others of much less amounts. There is no testimony as to whose grain constitutes this inventory, the nature of the inventory, or any other explanation. As the trial court found, there was simply not enough evidence before it to make any factual determination of the profit or loss with regard to the time from May 1 to June 30, 1981. In a civil case the burden of proof is on the plaintiff to prove, by a preponderance of the evidence, all facts essential to recovery. *Empire State Building Co. v. Bryde*, 211 Neb. 184, 318 N.W.2d 65 (1982). Scoular-Bishop has not met its burden on this point. The determination of the trial court is correct.

Scoular-Bishop also claims that it made certain advances to Bassett Grain and that damages should be awarded for Bassett Grain's failure to repay those advances, totaling about $20,000. First of all, we note that the amended petition on which this case was tried seeks damages arising only under the lease agreements between the parties. The only reference to "advances" is in a copy of an accounting summary letter exhibit attached to the amended petition, which states, "Advances from prior years $20,234.46." There is no evidence as to where, when, or if any repayment was agreed to by any authorized person employed by Bassett Grain. There is not enough evidence for the court to find liability for Bassett Grain in this connection. The amount

of the alleged advances can be gleaned from the record, but nothing else.

This action of the trial court in dismissing Scoular-Bishop's amended petition is correct and is affirmed.

AFFIRMED.