JACK CLINE ET AL., APPELLEES, V. FRANKLIN PORK, INC.,
APPELLEE, HILLSIDE HOG FEEDERS, INC., ET AL., APPELLANTS.

361 N.W.2d 566

Filed February 8, 1985.   No. 84-151.

Steven E. Achelpohl, John J. Gilroy, and Christine M. Schild
of Schumacher & Gilroy, for appellants.

Thomas H. McNally and William H. Stowell, for appellees Cline et al.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

This is a sequel to *Cline v. Franklin Pork, Inc.*, 210 Neb. 238, 313 N.W.2d 667 (1981) (*Franklin Pork I*). A factual background is necessary for a full understanding of the issues involved in this appeal.

On December 9, 1977, the plaintiffs, Jack and Ruth Cline, sued to enjoin the defendant, Franklin Pork, Inc., from operating a pig-feeding/breeding facility located adjacent to the plaintiffs' residence and farm. The plaintiffs alleged that the facility constituted a nuisance and interfered with the use and enjoyment of their home and farm.

At the conclusion of that trial the court found: "As to odor and flies, the operation of defendant's hog-raising facility . . . constituted a private nuisance interferring [sic] with the plaintiffs' use and enjoyment of their property." Rather than enjoining the operation of the facility at that time, the trial court retained jurisdiction and monitored the facility to determine whether the nuisance could be abated. On November 26 and 27, 1979, and January 7, 1980, further hearings were held to determine whether the defendant had taken appropriate action and made substantial progress in reducing the level of flies and odor to an acceptable level. At the conclusion of the hearing the trial court found that the nuisance previously found to exist had been corrected in that the defendant's operation did not materially interfere with the plaintiffs' use and enjoyment of their premises. The plaintiffs' appeal from that order constituted the grounds for our decision in *Franklin Pork I*.

In *Franklin Pork I* this court held that "[t]here appears to be sufficient evidence in the record upon which one could find that the nuisance had not, in fact, been abated." We went on to hold that "[t]he trial judge's appointment of himself as monitor was error, and the error so permeates this trial as to make it advisable to reverse this matter and return it to the trial court with directions to hold a new hearing to determine if the nuisance has, in fact, been abated." *Id.* at 246-47, 313 N.W.2d

at 672.

Additional defendants have been added since *Franklin Pork I.* Defendant Agri-Enterprises, Inc., purchased the land from Franklin Pork, Inc. Defendant Hillside Hog Feeders, Inc., owned the hogs in the facility. Defendant Burt Tribble is a stockholder and president and manager of the facility.

Upon remand the district court found that the nuisance had not been abated. The court enjoined the defendants from continued operation of the facility and ordered that the defendants move the facility off the premises within 60 days. The defendants' appeal from this order constitutes the basis for this opinion.

Three issues are raised on appeal: (1) Has the nuisance been abated? (2) If the nuisance has not been abated, what is the proper remedy? (3) Is the defendants' facility protected from being a nuisance under the Nebraska Right to Farm Act, Neb. Rev. Stat. §§ 2-4401 to 2-4404 (Reissue 1983)?

> [E]ven though this is an equity action and upon appeal it is triable de novo, it is still subject to the condition that when the evidence on material questions of fact is in irreconcilable conflict, the court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite.

*Cline v. Franklin Pork, Inc.*, 210 Neb. 238, 240, 313 N.W.2d 667, 669 (1981); *Daugherty v. Ashton Feed and Grain Co., Inc.*, 208 Neb. 159, 303 N.W.2d 64 (1981).

"Ordinarily, a legitimate business enterprise is not a nuisance per se, but it may become a nuisance in fact. It may become such by reason of the conditions implicit in and unavoidably resulting from its operation or because of the manner of its operation." *Franklin Pork, supra* at 240-41, 313 N.W.2d at 669; *Botsch v. Leigh Land Co.*, 195 Neb. 509, 239 N.W.2d 481 (1976).

"To justify abatement of a claimed nuisance, the annoyance must be such as to cause actual physical discomfort to one of ordinary sensibilities. There is a presumption, in the absence of evidence to the contrary, that a plaintiff in an action for

abatement of a nuisance has ordinary sensibilities." (Syllabus of the court.) *Burgess v. Omahawks Radio Control Org., ante* p. 100, 362 N.W.2d 27 (1985).

At this point we note that the record is replete with evidence that the nuisance created by the defendants has not been abated.

Concerning the odor problem, the plaintiffs and their witnesses testified that the odor emanating from the facility continues to be so rank that the plaintiffs must keep the doors and windows in the house closed. The plaintiffs cannot enjoy outdoor activities and they cannot entertain friends and relatives at their home. Jack Cline testified that in 1983 the odors were prevalent 75 to 80 percent of the time. He testified there is "still [a] nauseating type of smell" even in the winter months. Ruth Cline testified that ever since the facility has been in operation and continuing to the date of the last trial, the odor varies in intensity "from a slight hog smell to just absolutely horrid." From the time the facility commenced operation, Ruth Cline stated that the odor has gotten progressively worse.

The plaintiffs' evidence concerning the continuous noxious odors was, for the most part, uncontested by the defendants.

As was true with the odor problem, the record reveals that the fly population at the plaintiffs' home and farm has not substantially improved. From July 17 to July 24, 1983, approximately 12,976 flies were exterminated on the plaintiffs' premises. From July 24 to July 31, 1983, approximately 14,900 flies were exterminated.

The plaintiffs introduced into evidence numerous pictures which were taken shortly before the latest hearing. These pictures portray a profusion of flies both in and about the plaintiffs' residence.

Dr. Charles Pitts, a university professor and head of the department of entomology at Penn State University, testified that the "probability is pretty high that most of the flies that are at the Cline residence have originated" from the hog facility.

The plaintiffs adduced evidence from numerous other witnesses concerning the inundation of flies in and about their residence. Randy Cline testified that in the last 5 to 10 years he has visited 30 to 40 other farmhouses but had never seen

anything even approaching the number of flies present at the plaintiffs' residence.

In defense, Burt Tribble testified that when the new owners purchased the facility early in 1981, the facility was quite rundown and was improperly maintained. Although there is evidence that the facility, for the most part, is now well maintained and operated for its type, this factor in and of itself is no defense to the nuisance.

The exercise of due care by the owners of a business in its operation is not a defense to an action to enjoin its operation as a nuisance. *Cline v. Franklin Pork, Inc.*, 210 Neb. 238, 313 N.W.2d 667 (1981); *Botsch v. Leigh Land Co., supra.*

Tribble's testimony concerning future expected improvements of the facility is irrelevant. The issue at this stage of the proceedings is whether or not the nuisance has been abated, not whether the nuisance could be abated in the future.

The defendants next contend that because their facility is located in an obviously rural area with many other livestock facilities in the area, their facility cannot be a nuisance. They assert that the "odor of which the Plaintiffs complain is merely part of the atmosphere of a normal rural farming community." Brief for Appellants at 16.

While the record recites the presence of many livestock facilities in the general area, and also recognizing that in *Franklin Pork I* we held that "[t]he fact that the residence is in a rural area requires an expectation that it will be subjected to normal rural conditions," 210 Neb. at 242, 313 N.W.2d at 670, we are not persuaded by the defendants' argument.

As observed in *Franklin Pork I*, the nuisance arises not so much because of the type of facility but, rather, because of the facility's location. The facility in question is located within one-fourth of a mile of the plaintiffs' property. Even the defendants' own expert witness noted that it was impossible to operate such a facility within a half mile of a residence and not have an odor problem.

The selection of a place of business is often a matter of both private and public concern and is not in all cases left to the owner alone. *Sarraillon v. Stevenson*, 153 Neb. 182, 43 N.W.2d 509 (1950).

A business which is lawful in itself may become a nuisance, either because of the locality in which it is carried on or because it is conducted in an improper manner. See *Daugherty v. Ashton Feed and Grain Co., Inc.*, 208 Neb. 159, 303 N.W.2d 64 (1981).

The record in the instant case reveals that it is inconceivable that so many pigs could be kept in the defendants' facility in such close proximity to the plaintiffs and not be offensive.

The defendants next contend that the district court abused its discretion in enjoining the operation of the facility.

"An injunction against a nuisance is an extraordinary remedial process which is granted not as a matter of right but in the exercise of the sound discretion of the court, to be determined on consideration of all the circumstances of each case." (Syllabus of the court.) *Daugherty v. Ashton Feed and Grain Co., Inc., supra.*

A court of equity will not usually enjoin the operation of a lawful business without regard to how serious may be the grievance caused thereby. *In the first instance*, at least, it will require the cause of the grievance to be corrected and will enjoin the conduct of the enterprise perpetually after it has been proven that no application of endeavor, science, or skill can effect a remedy where the owners cannot be induced to conduct it properly.

(Emphasis supplied.) *Cline v. Franklin Pork, Inc.*, 210 Neb. 238, 242-43, 313 N.W.2d 667, 670 (1981).

Here, the defendants had more than 20 months from the time of *Franklin Pork I* to remedy the nuisance, and more than 4 years from the time of the first trial in which to remedy the nuisance.

The plaintiffs' expert witnesses were of the opinion that due mainly to the propinquity of the defendants' facility to the plaintiffs' residence, this particular facility could not be operated without being a nuisance to the plaintiffs. At this juncture of the proceedings it is immaterial whether the defendants were unable or unwilling to abate the nuisance.

The operation of a legitimate business or certain aspects of the business which constitute a nuisance may be enjoined where it clearly appears there is no other complete remedy for the

injury done. See, *Daugherty v. Ashton Feed and Grain Co., Inc., supra; Prauner v. Battle Creek Coop. Creamery*, 173 Neb. 412, 113 N.W.2d 518 (1962).

Under the facts and circumstances of the instant case, the district court was correct in enjoining the operation of the defendants' facility.

Defendants' final contention is that the Nebraska Right to Farm Act, §§ 2-4401 to 2-4404, protects their facility from being a private or public nuisance. Defendants rely on § 2-4403 of the act, which provides:

> A farm or farm operation shall not be found to be a public or private nuisance if the farm or farm operation existed before a change in the land use or occupancy of land in and about the locality of such farm or farm operation and before such change in land use or occupancy of land the farm or farm operation would not have been a nuisance.

Without passing on the question as to whether the Nebraska Right to Farm Act, which became effective July 17, 1982, can be applied retrospectively, it is clear on its face that under the facts of this case the act affords the defendants no protection.

The plaintiffs purchased their farm on March 14, 1974, and have lived there since July of 1974. The initial defendant, Franklin Pork, Inc., was incorporated July 11, 1974, and purchased the farmland north of the Clines' farm on August 15, 1974. The operation of the pig facility did not begin until sometime after August 15, 1974. It is obvious that there was not a change in the land use or occupancy of land in and about the locality of the defendants' farm operation subsequent to the defendants' commencing of the operation of the pig facility. Consequently, the act is inapplicable on its face.

The trial court being correct in all respects, it is affirmed.

AFFIRMED.