ROBERT Z. FLANSBURGH ET AL., APPELLEES, V. JOHN G. COFFEY AND ROBERT HARDIN, APPELLANTS.

370 N.W.2d 127

Filed July 5, 1985.    No. 84-594.

Donald H. Bowman of Peterson, Bowman & Johanns, for appellants.

Michael E. Willet of Everson, Noble, Wullschleger, Sutter, Sharp, Korslund & Willet, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

The appellees, Robert Z. Flansburgh and his wife, Evelyn M. Flansburgh, sued to recover damages and to enjoin the appellants, John G. Coffey and his son-in-law, Robert Hardin, from conducting a hog raising and feeding operation, claiming the operation to be a nuisance. The trial court decreed that Coffey and Hardin pay the Flansburghs $2,000 in damages and that they be permanently enjoined from "conducting and carrying on a hog raising and feeding operation . . . in the metal pole building and hog confinement building . . . or to accumulate animal manure therein." The issues raised by the five assignments of error discussed by Coffey and Hardin in this appeal are whether the trial court erred in (1) determining that the Nebraska Right to Farm Act, Neb. Rev.Stat. §§ 2-4401 through 2-4404 (Reissue 1983), has no application; (2) determining that the operation constituted a nuisance; and (3) granting too broad an injunction. We affirm.

We note first of all that this action is one in equity. As such, we review the matter de novo on the record and reach an independent conclusion without reference to the trial court's findings, subject to the rule that when the evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that

the trial court observed the witnesses and their manner of testifying and accepted one version of the facts rather than the opposite. Neb. Rev. Stat. § 25-1925 (Reissue 1979); *Nixon v. Harkins, ante* p. 286, 369 N.W.2d 625 (1985); *Cline v. Franklin Pork, Inc.,* 219 Neb. 234, 361 N.W.2d 566 (1985); *Burgess v. Omahawks Radio Control Org.,* 219 Neb. 100, 362 N.W.2d 27 (1985).

Our review of the evidence in accordance with that rule reveals that since 1961 Coffey has been the owner of approximately 156 acres of rural land in Gage County, Nebraska. In 1968 Coffey conveyed approximately 1.67 acres thereof to the Flansburghs to be used for residential purposes. The Flansburghs have been improving their property and have extensively remodeled the house located on it.

Hogs were raised on the land by Coffey's tenant prior to the 1968 sale. Between 1968 and 1975, when Hardin began to farm Coffey's land, no hogs were raised thereon. A few hogs were raised on the Coffey land after 1975.

In 1981 a metal pole building was built on the Coffey land, situated some 50 feet from the Flansburghs' property. In November of 1982 Hardin finished construction of a hog confinement building on Coffey's property. The confinement building is located to the east of the Flansburghs', approximately 72 feet from their property line and approximately 133 feet from their house, a location selected because Coffey wanted to keep as much area as possible to farm and garden.

The confinement building is made of concrete and is approximately 34 to 36 feet wide and 78 feet long. The floor slopes to the south, where there is a pit 8 feet wide and 8 to 10 feet deep running along the full length of the building. The waste produced by the pigs is worked into the pit by them through a slatted cover. The waste is then treated chemically to reduce it into liquid form. When the pit fills, the waste is pumped and spread as fertilizer on the fields which abut the Flansburghs' property, an unpleasant event which takes place approximately three times a year.

The confinement building is designed to handle 400 hogs. The average number of hogs raised in the building in the year

and a half preceding trial was 300.

The operation produces strong odors which cause the Flansburghs' eyes to water and render it difficult for them to breathe. The Flansburghs also find it troublesome to remain out-of-doors or to open the windows of their home. As a consequence, the Flansburghs operate their air-conditioner almost constantly from April to September. Mrs. Flansburgh experiences headaches and stomach upsets because of the smells. They can no longer have backyard cookouts, and their grandchildren cannot play outside.

In addition, since the hogs were placed in the confinement building, the Flansburghs have been beset with an excess of flies. The flies are present even in the winter months. Mrs. Flansburgh washes the windows inside her house twice a month to remove the flyspecks, and the dead flies can be scooped up by the handful in the house. The Flansburghs also reported seeing rats on their property after the confinement facility was in operation, which they control with rat poison administered once every 2 weeks. Since the hog confinement building was put in operation, there has also been an increase in the starling population on the Flansburghs' land.

Coffey and Hardin first argue that the Nebraska Right to Farm Act, which became effective July 17, 1982, prevents the operation in question from being a nuisance. Section 2-4403 provides:

> A farm or farm operation shall not be found to be a public or private nuisance if the farm or farm operation existed before a change in the land use or occupancy of land in and about the locality of such farm or farm operation and before such change in land use or occupancy of land the farm or farm operation would not have been a nuisance.

Section 2-4402(1) defines the terms "farm or farm operation" as meaning "any tract of land over ten acres in area used for or devoted to the commercial production of farm products." A farm product is defined in § 2-4402(2) as including "animals useful to man and includes but is not limited to . . . livestock, including breeding and grazing, fruits, vegetables, flowers, seeds, grasses, trees, fish, apiaries, equine

and other similar products . . . ."

It is obvious on the face of the act that it does not apply to the situation before us. The act applies where there has been "a change in the land use or occupancy of land *in and about the locality of such farm or farm operation* . . . ." (Emphasis supplied.) § 2-4403; *Cline v. Franklin Pork, Inc.*, 219 Neb. 234, 361 N.W.2d 566 (1985). There is no evidence that there was any change in the use or occupancy of the land in and about the locality of the Coffey-Hardin operation. On the contrary, the evidence is that Coffey sold a portion of his land for residential purposes to the Flansburghs in 1968 and that the Flansburghs have been using the land they purchased as a residence since that date. The change has taken place on the Coffey land.

There being no merit to the first issue raised by the assignments of error, we proceed to the second issue, whether the evidence establishes the Coffey-Hardin operation to be a nuisance.

The rules applicable to the resolution of this issue have been most recently stated in *Cline v. Franklin Pork, Inc., supra*, and are set out below.

The right to have the air floating over one's premises free from noxious and unnatural impurities is a right as absolute as the right to the soil itself. Ordinarily, a legitimate business enterprise is not a nuisance per se, but may become a nuisance in fact by reason of the conditions implicit in and unavoidably resulting from its operation or because of the manner of its operation. The fact that a residence is in a rural area requires an expectation that the residence will be subjected to normal rural conditions, but not to such excessive abuse as to destroy the ability to live and enjoy the home, or such as to reduce the value of the residential property. To justify the abatement of a claimed nuisance, the annoyance must be such as to cause actual physical discomfort to one of ordinary sensibilities. In the absence of evidence to the contrary, there is a presumption that a plaintiff in an action for the abatement of a nuisance has ordinary sensibilities.

There is no question but that under the evidence detailed earlier the hog confinement operation conducted by Coffey and Hardin in the pole building and hog confinement building

constitutes a nuisance. The odors produced and the rats and flies attracted by the operation are more than offensive. It is true that there are activities on the Flansburghs' land which in and of themselves produce some odors and attract some flies, but the evidence clearly establishes that the repugnant nature of the present odors and the offensive magnitude of the present rat and fly infestations are caused by the hog confinement operation.

The last issue deals with the scope of the injunction, Coffey and Hardin claiming that it prevents the raising of any hogs and is therefore too broad. Such is simply not the case. The injunction prevents only the raising and feeding of hogs in the metal pole and confinement buildings, or the accumulation of animal manure therein. The evidence clearly supports that decree.

We are not unmindful that the first assignment of error as phrased declares that the evidence is insufficient to support "injunctive relief and damages." However, none of the arguments presented in the brief submitted by Coffey and Hardin deal with the $2,000 awarded to the Flansburghs for their "discomfort and the loss of reasonable enjoyment of their home premises." The rule has long been that ordinarily this court will consider only those assignments of error which are discussed in appellant's brief. *State v. Toth, ante* p. 311, 369 N.W.2d 644 (1985); *State v. Hoekstra, ante* p. 309, 369 N.W.2d 643 (1985); *Scoular-Bishop Grain Co. v. Bassett Grain*, 218 Neb. 280, 352 N.W.2d 904 (1984); Neb. Ct. R. 9D(1)d (rev. 1983). We therefore do not concern ourselves with the damage award.

AFFIRMED.