GEORGE AND JEANETTE HALL, HUSBAND AND WIFE, APPELLANTS,
v. GARY PHILLIPS, APPELLEE.

436 N.W.2d 139

Filed February 24, 1989.    No. 86-847.

Joy Shiffermiller, of Atkins Ferguson Zimmerman Carney, P.C., for appellants.

James W. Ellison, of Holtorf, Kovarik, Nuttleman, Ellison, Mathis & Javoronok, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

As owners of Morrill County cropland and a damaged bean crop, George and Jeanette Hall filed suit against Gary Phillips

and alleged that Phillips' tortious conduct constituted a private nuisance which interfered with Halls' use and enjoyment of their land. According to Halls, the private nuisance resulted from Phillips' application of the herbicide Atrazine to the corn crop planted on his tract adjacent to Halls' land and windblown soil from Phillips' tract, containing the applied Atrazine, which fell on Halls' land where their bean crop was planted. From a summary judgment and dismissal of their action, Halls appeal.

A summary judgment is properly granted when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue concerning any material fact or the ultimate inferences deducible from such fact or facts and that the moving party is entitled to judgment as a matter of law. [Citations omitted.] In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.

*Union Pacific RR. Co. v. Kaiser Ag. Chem. Co.*, 229 Neb. 160, 162-63, 425 N.W.2d 872, 875 (1988).

On May 10, 1985, Phillips planted a corn crop on his tract adjacent to the Hall land. On May 15, Phillips applied "Atrazine 4L Herbicide" to his corn crop. Among the "Precautionary Statements" contained in the manufacturer's literature supplied for Atrazine, the herbicide, as a "liquefied formulation," may be sprayed on a prospective corn crop as a preemergent control of weeds which might otherwise spring up in the planted corn. The information from the manufacturer warned: "Avoid using Atrazine near adjacent desirable trees, shrubs, or plants, or injury may occur." Also, the manufacturer's data outlined the restricted use of cropland, especially pertaining to rotational crops, after Atrazine application. Atrazine is the "cheapest" or least expensive herbicide for weed control in a corn crop and had been on the market for approximately 20 years before Phillips' application to his crop. Although other herbicides degrade comparatively quickly, Atrazine is neither readily biodegradable nor subject to rapid deterioration and "has quite a long life to it." After an

application of Atrazine, 2 years would elapse before the herbicide leached to a level safe for a bean crop.

Phillips' application of Atrazine was free from negligence and without drift from his tract. At the site of the Phillips and Hall land, a 50-mile-per-hour wind was not unusual during the planting season. On May 30, an extraordinarily high wind occurred with "dirt and soil . . . moving off of the fields."

Halls had planted beans on their land for 20 years and had never applied Atrazine to their cropland. Around June 10, George Hall planted a bean crop and later noticed that the young bean plants had suffered burns from Atrazine, which "stunted their growth" and prevented normal maturation of the plants. An adjuster from Phillips' insurance company said "he was sure that Atrazine had created the problem." A chemical analysis disclosed Atrazine present in the soil sample submitted by Halls. Yield from Halls' land was reduced on account of the Atrazine injury to the bean crop.

In response to Halls' claim based on nuisance, Phillips admitted applying Atrazine to his corn crop, but denied liability to Halls and also asserted that the proximate cause of Halls' damage was the severe wind of May 30, 1985, "an Act of God."

Both Halls and Phillips moved for summary judgment. In contemplation of a summary judgment, the district court concluded that the Restatement (Second) of Torts §§ 821A et seq. (1979) "correctly sets forth the law of nuisance, and defendant's acts do not amount to nuisance under the Restatement." The district court then dismissed Halls' action. Halls claim that the district court improperly granted summary judgment to Phillips and should have granted a summary judgment to them. Phillips contends that summary judgment for him is correctly based on the Restatement, *supra*, § 822 at 108, which contains a characterization or description of the conduct which may result in liability for the tort of private nuisance:

> One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
> (a) intentional and unreasonable, or

(b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

## PRIVATE NUISANCE UNDER THE RESTATEMENT: INTENTIONAL AND UNREASONABLE INVASIONS

"A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." The Restatement, *supra*, § 821D at 100.

The Restatement, *supra*, § 822, draws a distinction between intentional and unintentional invasions of another's interest in land, which may be characterized as a private nuisance, and imposes liability only if the invasion is "intentional and unreasonable" or "unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities."

What determines the existence of an intentional invasion of another's interest in land?

As noted in Prosser and Keeton on the Law of Torts, *Nuisance* § 87 at 624-25 (5th ed. 1984):

> Occasionally, the defendant may act from a malicious desire to so harm for its own sake; but more often the situation involving a private nuisance is one where the invasion is intentional merely in the sense that the defendant has created or continued the condition causing the interference with full knowledge that the harm to the plaintiff's interests [is] occurring or [is] substantially certain to follow.

Alternative constituents of an "intentional invasion" of another's interest in land are recognized in the Restatement, *supra*, § 825 at 117:

> An invasion of another's interest in the use and enjoyment of land or an interference with the public right, is intentional if the actor
>
> (a) acts for the purpose of causing it, or
>
> (b) knows that it is resulting or is substantially certain to result from his conduct.

As a meaning for "intentional invasion," the Restatement, *supra*, § 825, comments *c.* and *d.* at 180, provides:

> *c. Meaning of "intentional invasion."* To be

"intentional," an invasion of another's interest in the use and enjoyment of land, or of the public right, need not be inspired by malice or ill will on the actor's part toward the other. An invasion so inspired is intentional, but so is an invasion that the actor knowingly causes in the pursuit of a laudable enterprise without any desire to cause harm. It is the knowledge that the actor has at the time he acts or fails to act that determines whether the invasion resulting from his conduct is intentional or unintentional. It is not enough to make an invasion intentional that the actor realizes or should realize that his conduct involves a serious risk or likelihood of causing the invasion. He must either act for the purpose of causing it or know that it is resulting or is substantially certain to result from his conduct. . . .

   *d. Continuing or recurrent invasions.* Most of the litigation over private nuisances involves situations in which there are continuing or recurrent invasions resulting from continuing or recurrent conduct; and the same is true of many public nuisances. In these cases the first invasion resulting from the actor's conduct may be either intentional or unintentional; but when the conduct is continued after the actor knows that the invasion is resulting from it, further invasions are intentional.

To determine whether an intentional invasion exists in reference to a private nuisance, several courts have adopted the characterization embodied in the Restatement, *supra*, § 825; for example, *Morgan v. Quailbrook Condominium Co.*, 704 P.2d 573 (Utah 1985); *Padilla v. Lawrence*, 101 N.M. 556, 685 P.2d 964 (1984); *Keiswetter v Petoskey*, 124 Mich. App. 590, 335 N.W.2d 94 (1983); *Hughes v. Emerald Mines Corp.*, 303 Pa. Super. 426, 450 A.2d 1 (1982); *Sandifer Motors, Inc. v. City of Roeland Park*, 6 Kan. App. 2d 308, 628 P.2d 239 (1981). Thus, for the tort of private nuisance, an intentional invasion of another's interest in land exists when an actor purposefully causes the invasion, knows that the invasion is resulting from the actor's conduct, or knows that the invasion is substantially certain to result from the actor's conduct.

   Since the Restatement refers to an intentional and

"unreasonable" invasion of another's right to use and enjoy land, the meaning of *unreasonable* is expressed in the Restatement (Second) of Torts § 826 at 119 (1979):

An intentional invasion of another's interest in the use and enjoyment of land is unreasonable if

(a) the gravity of the harm outweighs the utility of the actor's conduct, or

(b) the harm caused by the conduct is serious and the financial burden of compensating for this and similar harm to others would not make the continuation of the conduct not feasible.

In further explanation of "unreasonableness," required in the tort of private nuisance based on an intentional invasion of another's interest in land, the Restatement, *supra*, § 826, comment *c.* at 120-21, states:

*The point of view.* The unreasonableness of an intentional invasion is determined from an objective point of view. The question is not whether the plaintiff or the defendant would regard the invasion as unreasonable, but whether reasonable persons generally, looking at the whole situation impartially and objectively, would consider it unreasonable. Consideration must be given not only to the interests of the person harmed but also for the interests of the actor and to the interests of the community as a whole. Determining unreasonableness is essentially a weighing process, involving a comparative evaluation of conflicting interests in various situations according to objective legal standards.

Thus, according to the Restatement, *supra*, § 826, in deciding whether a defendant is liable for a private nuisance based on an intentional invasion of another's interest in land, the trier of fact must determine whether the gravity of harm outweighs the utility of the defendant's conduct or whether the defendant's conduct causes serious harm, but payment of compensatory damages would render the defendant's continued conduct unfeasible. Even if utility of a defendant's conduct outweighs the gravity of the harm caused by the intentional invasion in a private nuisance, a defendant may still be liable if (1) the defendant's conduct causes severe harm and

(2) the defendant's compensation for the invasion will not prohibit the defendant's utilitarian conduct. *Crest Chevrolet, etc. v. Willemsen*, 129 Wis. 2d 129, 384 N.W.2d 692 (1986); *Padilla v. Lawrence, supra; Hughes v. Emerald Mines Corp., supra.*

As expressed in the Restatement, *supra*, § 827 at 124:

Gravity of Harm—Factors Involved

In determining the gravity of the harm from an intentional invasion of another's interest in the use and enjoyment of land, the following factors are important:

(a) The extent of the harm involved;

(b) the character of the harm involved;

(c) the social value that the law attaches to the type of use or enjoyment invaded;

(d) the suitability of the particular use or enjoyment invaded to the character of the locality; and

(e) the burden on the person harmed of avoiding the harm.

The Restatement, *supra*, § 828 at 129, contains:

Utility of Conduct—Factors Involved

In determining the utility of conduct that causes an intentional invasion of another's interest in the use and enjoyment of land, the following factors are important:

(a) the social value that the law attaches to the primary purpose of the conduct;

(b) the suitability of the conduct to the character of the locality; and

(c) the impracticability of preventing or avoiding the invasion.

Regarding an actionable private nuisance, we note that the Restatement's provisions pertain to an action for damages. Different considerations may exist concerning equitable relief. "[D]enial of relief by way of injunction is not always a precedent for denial of relief by way of damages. Consequently, liability for damages should be treated independently, and this Chapter is primarily concerned with damages." Restatement (Second) of Torts § 822, comment *d*. at 111 (1979).

NEBRASKA NUISANCE LAW

Nebraska cases, enunciating applicable standards to

determine whether an invasion constitutes a private nuisance, primarily involve claims for equitable relief. The Restatement's distinction between intentional and unintentional invasions has never been explicitly recognized in Nebraska. Relatively recent Nebraska cases, however, apply a standard consistent with the Restatement's view regarding intentional and unintentional invasions: "Ordinarily, a legitimate business enterprise is not a nuisance per se, but it may become a nuisance in fact. It may become such by reason of the conditions implicit in and unavoidably resulting from its operation or because of the manner of its operation." *Cline v. Franklin Pork, Inc.*, 210 Neb. 238, 240-41, 313 N.W.2d 667, 669 (1981); *Flansburgh v. Coffey*, 220 Neb. 381, 370 N.W.2d 127 (1985); *City of Syracuse v. Farmers Elevator, Inc.*, 182 Neb. 783, 157 N.W.2d 394 (1968).

Before *Cline, Flansburgh*, and *City of Syracuse*, this court, in *Vana v. Grain Belt Supply Co.*, 143 Neb. 125, 10 N.W.2d 474 (1943), refused to enjoin or allow damages as the result of a hog-feeding operation conducted near the Omaha stockyards. In so doing, the court announced that "hog-feeding yards are not in themselves a nuisance, and . . . they become such *only when improperly maintained or conducted.*" (Emphasis supplied.) *Id.* at 129, 10 N.W.2d at 476. The *Vana* court further noted:

> "[W]here pigs are raised under conditions as clean and sanitary as can reasonably be obtained, considering the characteristics of the animal and the necessity of confinement to close quarters, the fact that odors from those quarters are carried over to the premises of the summer residence of another will not make an actionable nuisance."

*Id.* at 130, 10 N.W.2d at 477 (quoting from *Clark v. Wambold*, 165 Wis. 70, 160 N.W. 1039 (1917)). Thus, under *Vana*, it seems that a lawful activity or business must be "improperly maintained or conducted" to be an actionable nuisance. *Vana* has never been overruled.

Seven years after *Vana*, this court decided *Sarraillon v. Stevenson*, 153 Neb. 182, 43 N.W.2d 509 (1950), and began developing what eventually has become the current equitable

standard in an action based on private nuisance. In *Sarraillon*, plaintiffs sought to enjoin the operation of a packing plant and stockyard in Nebraska City. Affirming an injunction, the court commented in *Sarraillon*: "A legitimate industry is generally not a nuisance, but it may become a nuisance in fact by reason of the manner of its operation and conditions implicit in and that unavoidably result from its operation . . . ." *Id*. at 189, 43 N.W.2d at 513. The *Sarraillon* court further held that "[t]he exercise of due care by the owner of a business in its operation does not constitute a defense to an action to enjoin its operation as a nuisance . . . ." *Id*. at 190-91, 43 N.W.2d at 514. Thus, while the *Vana* court apparently held that a defendant's activities, conducted with due care, do not constitute a nuisance, the *Sarraillon* court declared that due care was not a defense to a claim based on nuisance.

If there is an inconsistency between *Vana* and *Sarraillon*, Nebraska's equitable precedent has now been resolved in favor of a standard which focuses not on the defendant's conduct alone, as advocated in *Vana*, but, rather, on the conditions implicit in and unavoidably resulting from the defendant's activity or the manner in which the defendant's activities are conducted. See *Cline v. Franklin Pork, Inc., supra.*

Although prior Nebraska cases may not have dealt with a tort claim for damages resulting from a private nuisance, a comparative analysis of current Nebraska standards for an actionable private nuisance and the Restatement's standards is warranted. In a cursory glance, the standard contained in *Cline*, which focuses on the "conditions . . . unavoidably resulting from" a defendant's conduct, seems inconsistent with the Restatement's standard predicated on a defendant's conduct constituting an intentional invasion of another's interest in land. On closer examination, however, the *Cline* standard and the Restatement operate similarly: If a defendant's conduct unavoidably results in an interference with the use and enjoyment of another's property, the interference is "intentional" in the sense that the interference was "substantially certain to follow" from the defendant's conduct. Thus, while the *Cline* standard and the standard expressed in the Restatement have semantical distinctions, in reality the

standards are consistent and essentially pertain to the same type of conduct.

The Restatement's requirement of "unreasonable" has not been an explicit or implicit requirement for equitable relief from a private nuisance in Nebraska. Rather, for a nuisance in the context of an equity action, the invasion of or interference with another's private use and enjoyment of land need only be substantial. See *Karpisek v. Cather & Sons Constr., Inc.*, 174 Neb. 234, 117 N.W.2d 322 (1962). Thus, concerning equitable relief in accordance with *Karpisek*, one may have to endure insubstantial interferences with the use and enjoyment of land, but an invasion or interference which is substantial may result in equitable liability for a private nuisance and consequent damages, regardless of the reasonableness of the interference.

For a law action tried to a jury, where a court may be required to fashion instructions specifying the requirements for an actionable private nuisance and consequent liability, we are persuaded that the Restatement (Second) of Torts § 822 (1979) expresses a suitable standard to determine when one may be subject to liability and provides more guidance to a jury than do the present expressions concerning existence of a private nuisance as currently characterized in Nebraska equity cases. While enhancing the fact finder's task, the Restatement's "intentional and unreasonable" invasion requirement takes into account the various property rights of all parties to a law action based on a tortious private nuisance. Therefore, we hold that in a law action one may be subject to liability for a tortious private nuisance (1) if the defendant's conduct is a proximate cause of an invasion of another's interest in the private use and enjoyment of land and (2) if the invasion is intentional and unreasonable or is otherwise actionable under rules controlling liability for negligence or liability for abnormally dangerous conditions or activities. See the Restatement, *supra*, § 822. Although our holding today provides a standard to determine when a defendant may be subject to liability for a tortious private nuisance and further provides a characterization, definition, or meaning for *intentional* in reference to an invasion of another's interest in land, our discussion concerning other aspects of the tort of private nuisance is merely submitted

for consideration by courts and counsel in framing future questions concerning the tort of private nuisance.

Halls maintained a law action for compensatory damages and utilized existing principles applicable for equitable relief from a private nuisance, whereas we have today enunciated a rule pertaining to the type of conduct which may result in tort liability for a private nuisance. As the district court noted, Halls have not alleged that Phillips was negligent or that his conduct involved abnormally dangerous conditions or activities. Nevertheless, we reverse the summary judgment granted to Phillips because there is a genuine question of material fact in Halls' claim.

In our review of the record, we find a factual question whether Phillips' invasion of Halls' land by windblown soil tainted with Atrazine was intentional, namely, an invasion "substantially certain to follow" from Phillips' application of the herbicide as a preemergent weed control, especially in view of frequent and high winds in Morrill County and the extraordinary wind on May 30, 1985. Further, if Phillips intentionally invaded Halls' interest in the use and enjoyment of their land, factual questions exist concerning the unreasonableness of Phillips' invasion. Given the state of the record, those questions cannot be summarily resolved and must await disposition in further proceedings and perhaps resolution by the trier of fact, which may include a jury. Because these issues are not conclusively resolved by the pleadings, depositions, and affidavits in the record presented to us, a genuine issue of material fact exists in Halls' case. The district court improperly granted summary judgment to Phillips. By the same token, under the state of the record, the factual questions which defeat Phillips' entitlement to a summary judgment also preclude a summary judgment for Halls.

We reverse the summary judgment granted by the district court and remand this matter for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.