LESLIE N. JOHNSON AND AMY A. JOHNSON, HUSBAND AND WIFE, APPELLANTS, V. KNOX COUNTY PARTNERSHIP, A NEBRASKA GENERAL PARTNERSHIP, AND KNOX COUNTY FEEDERS, INC., A NEBRASKA CORPORATION, APPELLEES.

728 N.W.2d 101

Filed March 2, 2007.   No. S-05-853.

Steven M. Virgil, of Creighton Legal Clinic, and, on brief, James M. Buchanan for appellants.

David A. Domina and Claudia L. Stringfield-Johnson, of Domina Law Group, P.C., L.L.O., for appellees.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Leslie N. Johnson and Amy A. Johnson, husband and wife, live near a cattle confinement facility operated by Knox County Feeders, Inc., on land owned by Knox County Partnership in rural Knox County, Nebraska. The Johnsons brought this action to enjoin certain operations of the confinement facility, alleging that it was in violation of county zoning regulations and constituted a nuisance. The district court for Knox County entered summary judgment in favor of both defendants, based on its determination that the confinement facility was not in violation of county zoning regulations. The Johnsons perfected this appeal. We conclude that while summary judgment was proper as to the claim based upon alleged zoning violations, there are genuine issues of material fact which preclude summary judgment on the claim that the operation of the confinement facility constituted a private nuisance.

## FACTS

### PARTIES

Since about 1990, the Johnsons have owned and resided on approximately 400 acres of land in Knox County. They conduct a farming operation, growing row crops and raising some livestock. Knox County Partnership (hereinafter the Partnership) owns approximately 50.5 acres of land in rural Knox County, located about three-quarters of a mile south-southeast of the Johnson farm. The Partnership, consisting of Donald Stange and Marion Rus, purchased the land in 2003. Knox County Feeders, Inc. (hereinafter Feeders), operates a cattle confinement facility on the Partnership's land. Stange and Rus are the principal shareholders of Feeders, having purchased their stock in that business from previous owners in 2003 at the same time the Partnership purchased the land. Feeders has operated a cattle confinement facility at this location since about 1993.

### NEBRASKA'S DEPARTMENT OF ENVIRONMENTAL QUALITY

In 1993, Feeders was issued a permit by Nebraska's Department of Environmental Quality (DEQ) to operate a livestock waste control facility for 980 head of cattle. However, a site inspection by

DEQ in October 1999 revealed that Feeders had about 4,300 head of cattle in its confinement facility. Subsequently, DEQ demanded that Feeders obtain the appropriate operation and construction permits from DEQ to bring the cattle confinement facility into compliance with applicable state regulations. After finally complying with DEQ requirements, Feeders was issued a livestock waste control facility operating permit in December 2002 for 5,000 head of cattle. That operating permit was reissued by DEQ in February 2004 after Stange and Rus purchased Feeders.

KNOX COUNTY ZONING

In 1997, Knox County reinstated the enforcement of county zoning regulations. Knox County amended its zoning regulations in April 1999, adding, among other things, the following provisions: ·

**ARTICLE XI: LIVESTOCK CONFINEMENT**

. . . .

11.2 NEW AND/OR EXPANDED LIVESTOCK CONFINEMENT: PERMIT REQUIRED

. . . No extension, enlargement, or addition of or to an existing livestock confinement by over 150 animal units shall be created unless a livestock confinement permit is first obtained from the Zoning Administration.

. . . .

11.6 LAND BASE TO SPREAD MANURE

An appropriate land base is needed to spread and properly distribute the manure to prevent pollution to the soil, water, and air. An applicant must . . . properly spread and distribute the manure. . . .

. . . .

11.8 NUISANCE PROTECTION ZONE (SET BACKS RELATIVE TO SIZE AND TYPE)  ·

. . . .

All livestock confinements must have a minimum set back from a residence that is relative to the size (one time capacity) and the type of the livestock confinement. For beef confinements, they must be a minimum distance of one foot from a residence for each animal unit. . . .

. . . .

Set backs relative to size and type can be wa[i]ved if the affected residences give appropriate waivers and easements. . . .

If a producer, upon asking permission within a setback, is denied, the producer may appeal to the Board of Adjustments. . . . Upon this appeal, the Board of Adjustments will make [its] recommendations to the Board of Supervisors who will hold a hearing and make a final ruling on the appeal.

In May 2003, the Knox County zoning administrator informed Feeders that, based on DEQ inspection records, it had not undergone expansion as of April 1999 and was thus "grandfathered" for 5,000 head of cattle.

In February and March 2004, the Johnsons attended the Knox County Board of Supervisors' meetings and presented complaints that the Partnership and Feeders were in violation of county zoning regulations. At its March meeting, the board of supervisors asked the Knox County Attorney to present a report at the next meeting on the issues raised by the Johnsons. The board also adopted a resolution that amended the article XI livestock confinement zoning regulations, adding to or modifying, among other things, the following provisions: Under part 11.1, "Definition of Livestock Confinement," add "An existing confined livestock feeding operation/facility shall mean an operation that was in existence prior to April 29, 1999." Under part 11.8, "Nuisance Protection Zone (Set Backs Relative to Size and Type)," add "All new livestock confinements must have a minimum set back from a residence or existing livestock confinement that is relative to the size (one time capacity) and the type of the livestock confinement." At the April 2004 board of supervisors' meeting, the county attorney reported that in his opinion, Feeders was "grandfathered" under the Knox County zoning regulations and that any expansion of the facility had been done before the 1999 county zoning regulations.

## Legal Proceedings

On June 4, 2004, the Johnsons filed a complaint in the district court for Knox County against the Partnership. The Johnsons filed an amended complaint on August 3, adding Feeders as a defendant. In their amended complaint, the Johnsons recited the relevant parts of the April 1999 Knox County zoning regulations

regarding livestock confinements and alleged, restated, that (1) Feeders had in excess of 3,868 animal units, while the Johnsons' residence was only 3,867 feet from the Partnership and Feeders' cattle confinement facility, and (2) since 1999, Feeders has expanded its confinement facility by more than 150 animal units. The Johnsons also made the following allegations:

> 8. . . . Based upon information and belief, [the Johnsons] understand that . . . Feeders . . . has sufficient spreading acres for its cattle, but does not spread the manure on such acres, preferring instead to dump large quantities of manure within a small land area, particularly in areas proximate to the confinement. This concentrated dumping causes pollution to the [Johnsons'] soil, water and air.

> 9. . . . The continued operation and illegal expansion of the [Partnership and Feeders'] livestock confinement yards as well as concentrated dumping of manure in violation of county regulations creates a nuisance to the [Johnsons]. The [Johnsons] suffer from odor, physical intrusion of liquid manure created by [the Partnership and Feeders'] confinement [yards] and excessive dust from [the Partnership and Feeders'] unlawful confinement operation.

The Johnsons sought to enjoin the Partnership and Feeders from operating a cattle confinement facility in excess of that permitted by county zoning regulations and from concentrated dumping of manure.

The Partnership and Feeders denied the material allegations of the Johnsons' amended complaint and alleged various defenses. They moved for summary judgment, as did the Johnsons. After receiving evidence, the district court entered an order granting summary judgment in favor of the Partnership and Feeders and dismissing the Johnsons' amended complaint. In its order, the court noted:

> [The Johnsons'] basic contention is that the [Partnership and Feeders] cannot operate a feedlot which contains more than a thousand head of cattle and that the Knox County Board of Supervisors and the Nebraska DEQ are in violation of the zoning regulations in issuing permits for the [Partnership and Feeders] to operate their feedlot with up to 5,000 head of cattle.

Referring to Neb. Rev. Stat. § 23-114.05 (Cum. Supp. 2006), the district court determined that the Johnsons had standing to sue based upon alleged violations of county zoning regulations, but found that "[t]here is nothing in the evidence to indicate that the [Partnership and Feeders] are currently violating any Knox County Zoning permit or use authorized by the zoning officials for Knox County. [The Johnsons] are, in essence, attacking the zoning officials' judgment in issuing the permits that the defendants have." The district court further determined that the board of supervisors, the county attorney, and the zoning administrator did not abuse their discretion in "grandfathering" the cattle confinement facility.

The Johnsons timely appealed, and we moved the appeal to our docket on our own motion, in accordance with this court's authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENT OF ERROR

The Johnsons assign, restated, that the district court erred in granting summary judgment for the Partnership and Feeders because the Johnsons' complaint alleged a claim based on nuisance, which claim the district court did not address.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Pogge v. American Fam. Mut. Ins. Co.*, 272 Neb. 554, 723 N.W.2d 334 (2006). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

When adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without

substantial controversy and direct such further proceedings as the court deems just. *City of Columbus v. Swanson*, 270 Neb. 713, 708 N.W.2d 225 (2005).

## ANALYSIS

■ We begin by identifying the theory or theories upon which the Johnsons sought injunctive relief. To determine the nature of an action, a court must examine and construe a complaint's essential and factual allegations by which the plaintiff requests relief, rather than the legal terminology utilized in the complaint or the form of a pleading. *Wendeln v. Beatrice Manor*, 271 Neb. 373, 712 N.W.2d 226 (2006). The Johnsons alleged that the existence and operation of the cattle confinement facility "violates Knox County zoning regulations concerning the operation of livestock confinements." They further alleged that "[t]he continued operation and illegal expansion of the [Partnership and Feeders'] livestock confinement yards as well as concentrated dumping of manure in violation of county regulations creates a nuisance to the [Johnsons]." They claimed that they "suffer[ed] from odor, physical intrusion of liquid manure," and "excessive dust" caused by the cattle confinement facility.

The factual allegations set forth in the operative complaint indicate two separate theories of relief. Section 23-114.05 provides a procedure whereby owners of real estate affected by a violation of county zoning regulations may bring an action to enjoin the violation. See, *Omaha Fish and Wildlife Club, Inc. v. Community Refuse, Inc.*, 208 Neb. 110, 302 N.W.2d 379 (1981). While not specifically invoking § 23-114.05, the Johnsons' complaint includes factual allegations which, if proved, would entitle them to relief under this statutory remedy. But the Johnsons also alleged that the confinement facility constitutes a nuisance. Nebraska recognizes a common-law tort for private nuisance in both actions at law seeking damages and actions in equity seeking injunctions. See, *Goeke v. National Farms, Inc.*, 245 Neb. 262, 512 N.W.2d 626 (1994) (equitable action for injunctive relief); *Hall v. Phillips*, 231 Neb. 269, 436 N.W.2d 139 (1989) (action for damages). We examine each of the Johnsons' two theories separately to determine whether summary judgment was proper.

STATUTORY REMEDY TO ENFORCE ZONING REGULATIONS

The remedy afforded by § 23-114.05 lies where a violation of a county zoning regulation is proved. The district court concluded that there was "nothing in the evidence to indicate that the [Partnership and Feeders] are currently violating any Knox County Zoning permit or use authorized by zoning officials for Knox County." The Johnsons do not assign error to this portion of the district court's order. Accordingly, there is no genuine issue of material fact regarding the Johnsons' allegations that the cattle confinement facility was conducted in violation of county zoning regulations. The Partnership and Feeders are entitled to judgment as a matter of law with respect to such claim.

PRIVATE NUISANCE

The Johnsons alleged that the cattle confinement facility constituted a nuisance which subjected them to odor, physical intrusion of liquid manure, and excessive dust. "'A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land.'" *Hall v. Phillips*, 231 Neb. at 272, 436 N.W.2d at 142, quoting Restatement (Second) of Torts § 821D (1979). To establish their nuisance claim, the Johnsons were not required to prove that the cattle confinement facility existed or was operated in violation of zoning regulations or other law. With respect to an action in equity, a legitimate business enterprise is not a nuisance per se, but it may become a nuisance in fact by reason of the conditions implicit in and unavoidably resulting from its operation or because of the manner of its operation. *Omega Chem. Co. v. United Seeds*, 252 Neb. 137, 560 N.W.2d 820 (1997); *Flansburgh v. Coffey*, 220 Neb. 381, 370 N.W.2d 127 (1985). A legal and proper activity may be a nuisance in fact simply because of its location. *City of Syracuse v. Farmers Elevator, Inc.*, 182 Neb. 783, 157 N.W.2d 394 (1968). See, also, *Cline v. Franklin Pork, Inc.*, 219 Neb. 234, 361 N.W.2d 566 (1985).

With respect to a nuisance in the context of an action in equity, the invasion of or interference with another's private use and enjoyment of land need only be substantial. *Omega Chem. Co. v. United Seeds, supra*; *Hall v. Phillips, supra*. Where one's business operation as conducted materially and injuriously affects the comfort and enjoyment and property rights of those in the

132

vicinity, it becomes a nuisance and may be enjoined. *Karpisek v. Cather & Sons Constr., Inc.*, 174 Neb. 234, 117 N.W.2d 322 (1962).

To justify the abatement of a claimed nuisance, the annoyance must be such as to cause actual physical discomfort to one of ordinary sensibilities. *Goeke v. National Farms, Inc.*, 245 Neb. 262, 512 N.W.2d 626 (1994); *Flansburgh v. Coffey, supra*; *Cline v. Franklin Pork, Inc., supra.* There is a presumption, in the absence of evidence to the contrary, that a plaintiff in an action for abatement of a nuisance has ordinary sensibilities. *Goeke v. National Farms, Inc., supra*; *Flansburgh v. Coffey, supra*; *Cline v. Franklin Pork, Inc., supra.* Even in an industrial or rural area, one cannot conduct a business enterprise in such manner as to materially prejudice a neighbor. *Botsch v. Leigh Land Co.*, 195 Neb. 509, 239 N.W.2d 481 (1976). The fact that a residence is in a rural area requires an expectation that the residence will be subjected to normal rural conditions, but not to such excessive abuse as to destroy the ability to live in and enjoy the home, or such as to reduce the value of the residential property. *Flansburgh v. Coffey, supra*; *Cline v. Franklin Pork, Inc., supra*; *Botsch v. Leigh Land Co., supra.* It is true that rural residents must expect to bear with farm and livestock conditions normally found in the area where they reside. But, a rural home and a rural family, within reason, are entitled to the same relative protection as others. *Botsch v. Leigh Land Co., supra.* The right to have the air floating over one's premises free from noxious and unnatural impurities is a right as absolute as the right to the soil itself. *Flansburgh v. Coffey, supra.*

The record includes the deposition testimony of the Johnsons. Leslie testified that members of his family experience breathing problems, eye irritation, nausea, and headaches from dust and odor emanating from the cattle confinement facility. He also testified that liquid manure slurry pumped from high pressure spraying devices operated and maintained by Feeders would sometimes mist or run off onto his property. Amy testified regarding an incident when she was sprayed with liquid manure from the high pressure spraying devices while repairing a fence on the Johnson property. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the

party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *In re Adoption of Jaden M.*, 272 Neb. 789, 725 N.W.2d 410 (2006); *Brodine v. Blue Cross Blue Shield*, 272 Neb. 713, 724 N.W.2d 321 (2006). Applying this standard, we conclude that there are genuine issues of material fact as to whether the cattle confinement facility caused a substantial invasion of or interference with the Johnsons' private use and enjoyment of their property. Accordingly, the Partnership and Feeders were not entitled to summary judgment with respect to the private nuisance claim.

## CONCLUSION

There are no genuine issues of material fact with respect to the Johnsons' claim that the cattle confinement facility conducted by Feeders on property owned by the Partnership violated zoning regulations. We affirm the entry of summary judgment in favor of the Partnership and Feeders on this claim. However, we reverse the entry of summary judgment with respect to the Johnsons' private nuisance claim because there exist genuine issues of material fact as to whether the feeding operation substantially invaded or interfered with the Johnsons' use and enjoyment of their property so as to constitute an actionable private nuisance. We remand the cause to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.