39  437,
43   71

## BANK OF COMMERCE v. PETER GOOS.

FILED FEBRUARY 20, 1894.   No. 5150.

1. The damages recoverable for the refusal of a bank to pay a check, drawn upon it by one who has funds with the bank wherewith to make such payment, should not exceed such amount as reasonably and fairly in the natural course of things would result from such refusal.

2. Damages. General damages are such as the jury may give when the judge cannot point out any measure by which they are to be ascertained except the opinion and judgment of a reasonable man. Special damages are such as by competent evidence are directly traceable to defendant's failure to discharge his contract obligations, or such duties as are imposed upon him by law.

3. Introduction of Improper Evidence: EFFECT: REVIEW. When a party litigant has, by an evasion of the adverse ruling of the court, intentionally and willfully introduced evidence of facts improper for consideration by the jury, it must be presumed that such improper evidence has had a prejudicial effect, and the verdict should accordingly be set aside.

ERROR from the district court of Douglas county. Tried below before HOPEWELL, J.

*Cornish & Robertson,* for plaintiff in error.

*C. A. Baldwin, contra.*

RYAN, C.

By his petition filed in the district court of Douglas county, Nebraska, Peter Goos alleged that the Bank of Commerce was a corporation carrying on a general banking business, and that as such it invited and received deposits to be held and paid out upon the checks of its customers; that during the month of September, 1889, the said Goos was a depositor in said bank, and had on deposit in said bank about $3,300 on the 20th of said last-named month. The injuries for which compensation was sought were described in the following language: "Plaintiff says that on the 20th day of September, 1889, and when he so had in said bank said balance of more than $3,300, that said bank had so received from plaintiff, as aforesaid, on deposit, and which said sum of money was so held by defendant subject to the order of plaintiff, he drew his check on said bank for the sum of $804.90, payable to the order of the city treasurer of Omaha; that at said date John Rush was the city treasurer of Omaha, and plaintiff delivered said check to said Rush in payment of certain taxes due from the plaintiff to the city of Omaha; that afterwards, on the 23d day of September, the said check was presented to said defendant [Bank of Commerce] for payment, and payment was refused on said check on the pretended excuse that plaintiff had no funds in the bank, and the defendant made no other or different excuse for not honoring and paying said check, and said check was not paid by defendant and never was, and was returned by said bank to said Rush dishonored and

unpaid.   Plaintiff says that at the time said check was presented for payment at defendant's bank, and at all times from and after September 20, 1889, plaintiff had on deposit in said bank, subject to his order and to be paid on his checks, more than $3,000, and out of which said funds said check should have been paid.   Plaintiff says that for the reason that said check was not paid by said defendant when it was so as aforesaid presented to said bank for payment, and for no other cause, and without any fault on the part of said plaintiff whatever, the said John Rush filed a complaint with the police court of Omaha charging said plaintiff therein with the crime of obtaining a tax receipt under false pretenses and by falsely and feloniously representing to said Rush that he had funds in said defendant's bank subject to be paid on the check of said plaintiff; and upon said complaint having been so filed a warrant was issued by the police judge of Omaha for the arrest of said plaintiff, and by authority of said warrant and upon said complaint said plaintiff was arrested by the police officers of Omaha and was taken to the city prison, where said plaintiff was imprisoned with the lowest, filthiest, and most abandoned of human creatures, and plaintiff was kept so imprisoned for a long space of time, to-wit, four hours, and was released from his said imprisonment on the condition only of giving bail in the sum of $1,200 for his appearance at the time fixed by said court for the trial of his case, and plaintiff was compelled to and did give said bail and was thereby released from his said imprisonment.   Plaintiff says that when he so gave said check he had, and knew he had, in said bank, subject to his order, a sum of money greatly in excess of the amount of said check, and plaintiff had no notice or suspicion even that said check would not be honored and paid, and said check was so given by said plaintiff in good faith expecting that it would be honored and paid, and said check would have been paid but for the false, wicked, and cruel and illegal act of said defendant, its offi-

cers and employes, in refusing to honor and pay the same. Plaintiff says that he was, and for several years last past has been, engaged in the business of keeping a hotel in Omaha, and by so doing formed an extensive acquaintance in the state of Nebraska and adjoining states among the traveling public; that plaintiff is also doing an extensive business in various branches of trade, oftentimes requiring an extensive credit to carry on his said business, which before the occurrence of the events so complained of he was able to and did obtain. Plaintiff says that by reason of the refusal of the said defendant to honor and pay his said check, and his said arrest upon said charge aforesaid, and before the truth or falsity of said charge was known or could be determined, the said charge against him and the fact of his arrest and imprisonment was published in the daily papers of Omaha and sent broadcast over the land in this state and adjoining states, and plaintiff was brought thereby to great and everlasting disgrace and contumely; and plaintiff's character was by reason of the premises aforesaid greatly injured; and persons whose confidence he was entitled to and did have before that time, by reason of the acts of said defendant, questioned the integrity of said plaintiff and refused to give him the financial credit which they had been accustomed to, and although plaintiff is possessed of a large amount of property over and above all his indebtedness, by reason of the said acts of said defendant, his said creditors became clamorous for their pay, and plaintiff has been caused great embarrassment and has been compelled to make great sacrifices to meet and pay his said creditors, all of which said state of facts were caused by the said acts of said defendant. Plaintiff says by reason of said averments and the disgrace brought upon him he has suffered great distress and pain of mind, and has suffered great loss and damage to his reputation as an honest business man; that he has suffered great pecuniary loss and damage in the manner aforesaid, and he says by reason of the premises

he has sustained damages in the sum of $50,000." For the sum last named judgment was prayed.

The answer admitted that the defendant was a banking corporation, and that plaintiff was a customer of said bank, and that on September 1, 1889, plaintiff had on deposit in said bank the.sum of $103.50, and the defendant denied all other allegations of the petition. Affirmatively, the defendant answered that about September 20, 1889, plaintiff drew his check on said bank for the sum of $804.90, payable to John Rush, city treasurer of Omaha, which check was presented for payment on the 23d day of said month, and payment thereof was refused for the reason that the said bank then held a note of Peter Goos dated August 15, 1889, due by its terms in ninety days from its date, and which it had been agreed, as defendant alleged, should be paid out of the proceeds of a mortgage loan (which at the date of the note Goos had in contemplation) whenever said loan should be effected. The defendant further answered that in accordance with said understanding the amount of the note aforesaid was charged against plaintiff when said loan was effected, and the unearned interest upon said note was credited to the account of Goos, and that this charge was afterwards assented to by Goos, and that by reason of charging said note against the account of Goos there was left an insufficient amount to pay his check afterwards given against said account in favor of the city treasurer. The bank further answering denied that the filing of the complaint, and the resulting arrest and imprisonment, and the publication alleged in the petition were the actual and necessary consequences of defendant's refusal to pay the check drawn in favor of said city treasurer, and denied that damages on that account were chargeable to the defendant. The matters affirmatively pleaded in the answer were denied *seriatim* in plaintiff's reply.

During the progress of the trial the parties stipulated as

follows: "It is agreed by the parties hereto for the purposes of this trial that Peter Goos, at the time his check that he gave the city treasurer for $804.90 was presented for payment and payment thereof refused, had in the defendant's bank, subject to being drawn by him, $3,625.24, unless the bank was authorized to charge Goos, as the bank did, the amount of his note which was dated August 15, 1889, given for $3,000, and due in ninety days from date. If the bank had the right to charge Goos with the amount of that note, as they did charge him, then, at the time the check to the city treasurer was presented for payment, the bank was not liable for dishonoring the check. It is not the intention of this stipulation to admit on the part of the defendant that said sum of $3,625.24 was correct except for the purposes of this action, nor is it the intention of this stipulation to admit any proposition of law, the intention of the parties being simply to save on this trial an accounting of these matters." This stipulation restricted the scope of inquiries to the ground upon which the defendant acted in charging the ninety-day note against the account of the plaintiff whereby arose the insufficiency of funds to pay the check in favor of the city treasurer when it was afterwards presented. The difficulty attending an analysis of the grounds of damage alleged in the petition was met in no way or degree, and to that question our attention must first be directed.

A reference to the averments of the plaintiff relative to the special damages which he claims the right to recover will show that plaintiff alleged that he had been keeping a hotel, whereby he had formed an extensive acquaintance throughout the state of Nebraska and adjoining states among the traveling public, etc. Following these introductory statements is this language: "Plaintiff says by reason of the refusal of said defendant to honor and pay his said check, and his said arrest upon said charge aforesaid, and before the truth or falsity of said charge was or

could be known or determined, the said charge against him and the fact of his said arrest and imprisonment was published in the daily papers of Omaha and sent broadcast over the land in this and adjoining states, and plaintiff was brought thereby to great and everlasting disgrace and contumely; and plaintiff's credit was by reason of the premises aforesaid greatly injured," etc. Towards the close of his petition plaintiff alleged that by reason of said premises and the disgrace brought upon him, he had suffered great disgrace and pain of mind, and great loss and damage to his reputation as an honest business man, etc. It is evident that the petition was framed upon the theory that the bank was liable for the arrest and imprisonment of plaintiff and the publication of that fact, whereby his credit was greatly damaged. The trial court, however, very properly held that these matters could not be charged to the bank for the mere refusal to pay the check of the plaintiff, his prosecution and imprisonment, and the published statements in relation thereto not being the natural result of such refusal. (*Sycamore Marsh Harvester Co. v. Sturm*, 13 Neb., 210; *Aultman v. Stout*, 15 Neb., 586.) The action, therefore, as was properly held by the trial court, was maintainable only as one for the loss of credit resulting from defendant's refusal to pay plaintiff's check. While this was the theory to which the court sought to limit the trial of the case, the utmost vigilance could not prevent evidence going to the jury, of the arrest and imprisonment of plaintiff, and of the manner in which these facts were published to the world. The offense charged against Goos, as will be noted in his petition, was that he fraudulently obtained credit by falsely pretending that he had on deposit with the defendant sufficient money to pay the check which he tendered the city treasurer for his taxes. Judge Benecke, one of plaintiff's witnesses, being under examination, was asked as to the arrest of plaintiff and how he learned of it. In the face of an objection, which,

in view of the innocent appearance of the question, could not be sustained, this witness answered: "I was sitting in my office on Fifteenth and Douglas, and the news-boys were hallooing on the street, "All about Peter Goos' arrest,' and I went down the street and bought a newspaper, and to my great astonishment I found that he had given a check to John Rush, the city treasurer, which was not honored." This was followed by other evidence of the same witness, that the fact just sworn to had a very bad effect upon the credit of plaintiff. In the examination of plaintiff himself he was asked: "What did they say about the matter; what did the boys say—the news-boys?" Answer: "All about Peter Goos' arrest; giving a forged check." This evidence was given under a ruling of the court that evidence might be given as to what the news-boys said as to the refusal of the bank to pay plaintiff's check, and how that refusal affected his credit. Immediately following this, plaintiff testified that immediately after his arrest, imprisonment, and the publication above referred to, ten or twelve business men of Omaha, where plaintiff did business, came down that same evening to plaintiff's house and wanted to settle up with him, and asked him what was the matter. In another part of his evidence plaintiff testified that he was arrested because of the refusal of the bank to pay his check. Again, on re-examination, he was asked why he did not go to the bank in answer to a telephone message instead of going home as he did, and he answered, "I did not get the papers; I got arrested; I got pulled in before I reached home." A motion was sustained to strike this out of the record, but that ruling did not probably efface from the minds of the jurors the effect of the testimony. Following this ruling upon the motion to strike from the record the above evidence, plaintiff's counsel offered to prove, without any question pending, that the reason he did not go to the bank was because he was arrested. Upon the final submission of the case the jury was instructed

that the fact Peter Goos had been arrested and imprisoned must not be taken into consideration to enhance his damages. The giving of this instruction was probably all that lay within the power of the court to do in avoidance of the prejudicial effect of the evidence to which we have just made reference, and yet that evidence must necessarily have had a prejudicial effect upon the minds of the jurors. This result was attained through the mistaken zeal of plaintiff's counsel in his endeavor to avoid the effect of the adverse rulings of the court, as to which, if he was aggrieved, he had an ample remedy otherwise than by circumvention.

At best, it is a question more difficult of application than of a general definition to determine what the measure of damages is for the refusal by a bank to pay a check when it has in its hands sufficient funds of the drawer for that purpose. In *Rosewater v. Hoffman*, 24 Neb., on page 230, is found the following language: "It is a well settled rule in this state that punitive, vindictive, or exemplary damages cannot be allowed. The only damages recoverable are denominated 'compensatory,' which are a satisfaction for the injury sustained. (*Boyer v. Barr*, 8 Neb., 70; *Roose v. Perkins*, 9 Neb., 315; *Riewe v. McCormick*, 11 Neb., 263; *Boldt v. Budwig*, 19 Neb., 739.)" In *Brooke v. Tradesmen Nat. Bank*, 69 Hun [N. Y.], 202, it was said that the measure of damages for a refusal to pay a check drawn upon a bank, which had sufficient funds of the drawer for that purpose, was such damages as might fairly and reasonably be considered as arising from a breach of contract according to the usual course of things. The supreme court of Illinois, in *Schaffner v. Ehrman*, 139 Ill., 109, used the following language: "The question therefore is, what is the measure of a banker's liability to a person engaged in trade for a refusal to pay his check, he having sufficient funds on deposit for that purpose, in the absence of evidence of malice or special injury to the depositor? Authorities are not

numerous on the question, but they seem to be uniformly to the effect that more than mere nominal damages are in such cases recoverable. The leading case is that of *Rolin v. Steward*, 14 Com. Bench [Eng.], 595. In that case there was no evidence of malice in fact nor of special damages; but the jury were told that they ought not to confine their verdict to nominal damages, but should give the plaintiffs such temperate damages as they should judge to be a reasonable compensation for the injury they must have sustained from the dishonoring of their checks, and the jury accordingly, by their verdict, gave substantial damages, on which judgment was rendered by the trial court. On appeal, all the judges concurred in holding that the direction to the jury was correct, the case being likened to that of a slander of a person in the way of his trade. Williams, J., said, 'I think it cannot be denied that if one who is not a trader were to bring an action against a banker for dishonoring a check at a time when he had funds of the customer in his hands sufficient to meet it, and special damages were alleged and proved, the plaintiff would be entitled to recover substantial damages; and when it is alleged and proved that the plaintiff is a trader, I think it is equally clear that the jury in estimating the damages may take into their consideration the natural and necessary consequences which must result to the plaintiff from the defendant's breach of contract, just as in the case of an action for slander of a person in the way of his trade, the action lies without proof of special damages.' This case was cited with approval in *Prehn v. Royal Bank of Liverpool*, 5 L. R. Exch. [Eng.], 92, in which Martin, B., says, 'Now with respect to damages in general, they are of three kinds: first, nominal damages; * * * the second kind is general damages, and their nature is clearly stated by Creswell, J., in *Rolin v. Steward*, 14 C. B. [Eng.], 595, to be such as the jury may give when the judge cannot point out any measure by which they are to be assessed except the opinion and judgment of a reasonable

man.' In Wood's Mayne on Damages [1st Am. ed.], sec.
8, p. 12, the rule is announced, that 'when there may be an
injury existing at present, though unascertainable, or to arise
hereafter, and for which no further action could be brought,
substantial damages might be given at once;' citing the case
of *Rolin v. Steward, supra.*     And text-writers, without ex-
ception, seem to approve of the rule announced in that case.
(See Bishop on Non-contract Law, sec. 49; 1 Sutherland
on Damages, 129.)    In 3 Am. & Eng. Encyc. of Law, 226,
it is said : 'The depositor, by proving special loss, may re-
cover special damages from the bank for its breach of duty ;
but if unable to do so he may recover such temperate dam-
ages as will be a reasonable compensation for the injury he
has sustained.'    (Citing authorities.)    'Where a bank re-
fuses to honor a check of its depositor without legal cause,
the latter is entitled to recover substanial damages.'   (5 Gen.
Digest of the United States, Ann., 283.)    Citing *Patterson
v. Marine Nat. Bank,* 130 Pa. St., 419, and other authori-
ties."    Plaintiff might have relied upon his right to gen-
eral damages under the above rule, but he did not.    Spe-
cial damages, we believe, are such as by competent evidence
are directly traceable to a defendant's failure to discharge
his contract obligations, or such duties as are imposed upon
him by law.    The language which we have just quoted at
great length probably, as nearly as possible, defines this kind
of damages in cases like that under consideration.    In the
case at bar the attempt to recover special damages was upon
allegations and proofs of an unjustifiable dishonor of a check
presented by the city treasurer, so confusedly interwoven
with the subsequent arrest of the plaintiff, his incarceration,
and the newspaper and news-boys' account thereof, that it
was impossible in the nature of things for the jury to seg-
regate and ascertain the amount of damages which were
solely traceable to the refusal to pay plaintiff's check, in-
dependently of the other circumstances to which we have
referred.    This confusion of matters, which should have

been kept distinct, seems by plaintiff to have been intensi-
fied by working in evidence which the court had repeatedly
ruled was inadmissible in proof of recoverable damages.
For the reasons given, the judgment of the district court is

REVERSED.