ELMER THOMSEN AND PHYLLIS THOMSEN, HUSBAND AND WIFE, APPELLANTS AND CROSS–APPELLEES, v. RON GREVE AND NANCY GREVE, HUSBAND AND WIFE, APPELLEES AND CROSS–APPELLANTS.

550 N.W.2d 49

Filed June 11, 1996. No. A–95–191.

Stuart B. Mills and Gregory C. Damman for appellants.

Michael F. Scahill, of Cassem, Tierney, Adams, Gotch & Douglas, for appellees.

HANNON, SIEVERS, and MUES, Judges.

HANNON, Judge.

This is a nuisance action brought by the plaintiffs, Elmer Thomsen and Phyllis Thomsen, to enjoin the defendants, Ron Greve and Nancy Greve, from using a wood–burning stove to

heat their home and for damages resulting from the smoke originating from the stove. The trial court found the smoke from the Greves' stove created a nuisance, and ordered the Greves to abate the nuisance by raising the height of their chimney by 3 feet and burning only clean, dry firewood. The court also found that the Thomsens failed to prove specific monetary damages, and thus awarded no damages. The Thomsens appeal, and the Greves cross–appeal. We conclude that the smoke from the Greves' wood–burning stove constitutes a nuisance and that damages are appropriate, and therefore, we affirm as modified that portion of the trial court's decree. With regard to abatement, there was insufficient evidence in the record to fashion an appropriate equitable remedy, and therefore, we reverse the judgment and remand the matter with directions to hold further proceedings.

## I. PLEADINGS AND FACTS

On April 1, 1993, the Thomsens filed a petition in the district court for Thurston County, alleging that since the fall of 1992, in the winter months, the Greves have used a wood–burning stove to heat their home, that it has produced intolerable odors and caused the Thomsens' home to smell, that the Thomsens asked the Greves to stop burning wood but they refused, and that the Greves knew of the effect of their stove on the Thomsens. The Thomsens requested general damages and that the Greves be enjoined from using their stove. The Greves filed a general denial and a motion for summary judgment. The motion was overruled on January 31, 1994, and a bench trial was had on October 25.

The evidence produced at that trial may be summarized as follows: The parties own and live in adjacent homes in Pender, Nebraska. The Greves have lived in their home since 1973. In 1990, the Thomsens moved into the house situated 15 feet west of the Greves' home. For approximately the first 2 years, the Thomsens and the Greves had a friendly relationship. Phyllis Thomsen and Nancy Greve visited in each other's homes on a frequent and regular basis. The parties have had some disputes, such as the location of their boundary line west of the Greves' fence and the Greves' practice of raising rabbits, which led to

the demise of their friendship. Nancy Greve testified she has not spoken to the Thomsens since August 1992.

In August 1992, the Thomsens complained to the Greves about the odor and smoke from the wood–burning stove, claiming that it smelled dirty. The Greves both testified that in the 6 years in which they had been operating the stove, this was the first time anyone complained about the smoke. The Greves both testified that Phyllis Thomsen told them that the smoke made the Thomsens' house smell dirty, but that Elmer Thomsen stated that it only had happened once and that it was not that bad. The Thomsens agree that in August they complained to the Greves about the smoke, but they deny that Elmer Thomsen stated it happened only once. They testified that Nancy Greve told them to just keep their windows and doors shut.

Ron Greve is a licensed electrician who owned his own business. In 1986, the Greves put an addition on their home, at which time they installed a wood–burning stove. Since 1986, the wood–burning stove has been the primary source of heat in the Greves' home; prior to that time they had a gas furnace and then electrical baseboard heat. The Greves claim to have burned only "dry, hard wood" in their stove and that Ron has cleaned the chimney once a month to prevent the buildup of creosote. The Greves supplement the wood–burning stove with electrical heat only on days when the temperature is below zero. They claim to never have burned garbage or railroad ties or anything else containing creosote.

The Greves testified that they have an "Earth Stove," and there is a buildup of creosote in the chimney from burning wood. Ron Greve has to clean the chimney once a month because of this buildup. In an attempt to reduce the frequency that he needed to clean the chimney, he increased the height of the chimney by 30 inches in 1987, but to no avail. The evidence shows that "Earth Stove" is a brand name, and such stoves are sealed tight. The Thomsens' son, Keith Thomsen, has a similar stove which he used for several years, and he never cleaned the chimney for that stove. The significance, if any, of the type and operating method of the Greves' stove was not developed by the evidence.

The Greves also testified that the smoke was not malodorous and that they burn nothing but clean, dry wood, usually ash, in their stove. Nancy Greve also testified that for the winter of 1993–94 the wind blew from the northeast only 5 times and was still 16 times and that the wind came from the northwest 99 times, from the north 8 times, from the south 11 times, from the southeast 17 times, and from the southwest 26 times.

Phyllis Thomsen testified that during the previous 4 years, the smoke entered her house about 140 times in total and that the smoke entered under certain weather conditions. The air has to be "moist" and the wind either still or from the northeast in order for the smoke to get into the Thomsens' home. The Thomsens described the smoke as "unbearable." They claimed that it was a creosote smell, which was a "rotten smell." They both testified that when the weather was right, the smoke would surround their house and creep inside. The smell made them physically ill. Phyllis Thomsen testified that besides making her distraught, the smoke gets in her throat and nose, causing a burning and scratchy sensation. She testified that at times the odor is so bad she would be forced to leave her home to escape it, and at times it causes them to not be able to sleep at night. Elmer Thomsen testified that he gets a bad cough as a result of the smoke, which forces him to leave his house on occasion to clear it up. The smoke and odor have prevented the Thomsens from having family get–togethers and visitors over to their home. They testified that the smoke and odor infiltrate their home to such a degree that even their clothes dryer fills with the smoky odor.

Frank Appleton, chairman of the Pender Village Board, went to the Thomsens' home on two separate occasions, and he testified that the smoke smelled like wood burning. The Pender chief of police also visited the Thomsens, as did another board member, and both testified that the smoke smelled like wood burning, and it was not an offensive odor. On cross-examination, it was revealed that Ron Greve served on the village board for some time prior to the filing of the petition in this case.

The Thomsens called family members and a neighbor to testify on their behalf. The Greves also called several neighbors

who testified that the smoke from the Greves' chimney did not smell like creosote. The witnesses for both sides were impeached to a degree by a showing of friendship or other reasons for their partiality to the party calling them.

After the trial, the court found the smoke to be a nuisance and ordered the Greves to raise the height of the chimney by 3 feet and to burn only "clean dry firewood." The court also found that the Thomsens failed to prove with specificity the actual monetary loss or damage, and thus awarded no damages. The Thomsens appeal from this order, and the Greves cross-appeal.

## II. ASSIGNMENTS OF ERROR

The Thomsens allege that the trial court erred (1) by failing to enjoin the Greves from using their stove as a means of abating the nuisance and (2) by failing to find and award to the Thomsens monetary damages. The Greves cross-appeal, alleging that the trial court erred (1) in denying their motion for summary judgment and (2) in finding that their wood-burning stove constituted a nuisance. We will address the cross-appeal first.

The denial of a motion for summary judgment is not a final order and therefore is not appealable. *Petska v. Olson Gravel, Inc.*, 243 Neb. 568, 500 N.W.2d 828 (1993); *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989). Therefore, that assignment will not be discussed further.

## III. STANDARD OF REVIEW

This is an appeal of a nuisance action for both an injunction and damages, and as such, the Supreme Court has stated the following standard of review applies:

An action for an injunction sounds in equity. *County of Dakota v. Worldwide Truck Parts & Metals*, [245 Neb.] 196, 511 N.W.2d 769 (1994). In an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, when credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact

that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *Lange Indus. v. Hallam Grain Co.*, 244 Neb. 465, 507 N.W.2d 465 (1993).

An appellate court has an obligation to reach its own independent conclusions as to questions of law. *Drew v. Walkup*, 240 Neb. 946, 486 N.W.2d 187 (1992); *State v. Melcher*, 240 Neb. 592, 483 N.W.2d 540 (1992).

*Goeke v. National Farms, Inc.*, 245 Neb. 262, 264, 512 N.W.2d 626, 629 (1994).

## IV. DISCUSSION

### 1. EXISTENCE OF NUISANCE

The Greves argue that the Thomsens failed to meet their burden to show the wood–burning stove was a nuisance. Since this issue is an issue of fact, we will consider the Greves' arguments on the weight of the evidence in a de novo trial of the factual issue later in this opinion. The Greves also argue that their conduct did not create a nuisance as a matter of law. They argue that they are unable to find any case where a court has been asked to determine that using a wood–burning stove created a nuisance, and they argue that under the principles set forth in §§ 826 through 828 of the Restatement (Second) of Torts (1979), the trial court should have determined their activity did not create a nuisance as a matter of law. The fact that other courts have not been confronted with cases involving heating stoves is not significant except to explain why neither the parties ·nor this court can cite similar cases. We shall therefore approach the legal issue from the basic principles involved.

#### (a) Question of Law:
#### Could Greves' Conduct Create Nuisance?

A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land. *Hall v. Phillips*, 231 Neb. 269, 436 N.W.2d 139 (1989). The Nebraska Supreme Court has expressly adopted the Restatement (Second) of Torts (1979) as the law of private nuisance actions in Nebraska, specifically citing § 822 as expressing a " 'suitable

standard to determine when one may be subject to liability . . . .' " *Kopecky v. National Farms, Inc.*, 244 Neb. 846, 851, 510 N.W.2d 41, 47 (1994) (quoting *Hall v. Phillips, supra*). We conclude that in these cases, the Supreme Court has recognized that the applicable sections of the Restatement contain, in substance, the Nebraska law on the subject, although the Nebraska Supreme Court has not always used the words or the approach set forth by the Restatement. We will therefore consider the issues raised with reference to the Restatement.

Section 822 provides in significant part: "One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either (a) intentional and unreasonable, or (b) . . . ."

The Supreme Court has recognized that the principles stated in the Restatement, *supra*, §§ 826 through 831, are to be used by judges as a guide to determine whether an intentional interference is unreasonable as a matter of law. *Kopecky v. National Farms, Inc., supra*. Section 826 defines what constitutes an unreasonable invasion and provides in significant part: "An intentional invasion of another's interest in the use and enjoyment of land is unreasonable if (a) the gravity of the harm outweighs the utility of the actor's conduct, or (b) . . . ."

The following sections further refine the definition of "unreasonable" and assist in determining whether the gravity of the harm suffered by the Thomsens is outweighed by the utility of the Greves' conduct. Section 827 provides:

> In determining the gravity of the harm from an intentional invasion of another's interest in the use and enjoyment of land, the following factors are important:
> (a) The extent of the harm involved;
> (b) the character of the harm involved;
> (c) the social value that the law attaches to the type of use or enjoyment invaded;
> (d) the suitability of the particular use or enjoyment invaded to the character of the locality; and
> (e) the burden on the person harmed of avoiding the harm.

Section 828 provides:

In determining the utility of conduct that causes an intentional invasion of another's interest in the use and enjoyment of land, the following factors are important:

(a) the social value that the law attaches to the primary purpose of the conduct;

(b) the suitability of the conduct to the character of the locality; and

(c) the impracticability of preventing or avoiding the invasion.

Section 829 A provides:

An intentional invasion of another's interest in the use and enjoyment of land is unreasonable if the harm resulting from the invasion is severe and greater than the other should be required to bear without compensation.

Section 831 provides:

An intentional invasion of another's interest in the use and enjoyment of land is unreasonable if the harm is significant, and

(a) the particular use or enjoyment interfered with is well suited to the character of the locality; and

(b) the actor's conduct is unsuited to the character of that locality.

In applying these principles to the instant case to determine whether or not the Greves' conduct could create a nuisance, we must necessarily assume that the Greves' conduct on their land interferes with Thomsens' enjoyment of their land in the manner that the Thomsens claim. Whether as a matter of fact the Thomsens have suffered the damages they claim is an issue of fact that need only be determined if the Greves' conduct under the Thomsens' version of the facts could be a nuisance.

The evidence shows that the parties live in a residential neighborhood in a small Nebraska town. Both their homes appear to be small one–story homes of a type that has been built since the 1950's. Pictures in evidence show both parties' homes to be attractive and in an attractive setting insofar as grass, trees, bushes, flowers, and other amenities are concerned.

The Thomsens testified that in a 4–year period the smoke entered their home approximately 140 times, which has made their house smell of creosote, a "rotten smell." It affected their

use of their home and affected them physically. We have no trouble concluding that, at least in our society, to have the use and enjoyment of one's home interfered with by smoke, odor, and similar attacks upon one's senses is a serious harm. The social value of allowing people to enjoy their homes is great, and persons subjected to odor or smoke from a neighbor cannot avoid such harm except by moving. One should not be required to close windows to avoid such harm.

On the other hand, aside from the simple right to use their property as they wish, it is difficult to assign any particular social value to the Greves' wood–burning stove. This method of heating does save on fossil fuels, but assuming that the stove used by the Greves emits foul–smelling smoke, society is certainly blessed if only a few people avail themselves of the opportunity to save fuel by using such stoves. The Greves could avoid invading the Thomsens' property by using other means of heating.

Under the Restatement (Second) of Torts § 822 (1979), we therefore conclude that if the Thomsens' evidence is true, the Greves' invasion of the Thomsens' land in the manner claimed by the Thomsens is unreasonable.

■ The Supreme Court has approached this problem from a different perspective. It has stated:

> The Restatement's requirement of "unreasonable" has not been an explicit or implicit requirement for equitable relief from a private nuisance in Nebraska. Rather, for a nuisance in the context of an equity action, the invasion of or interference with another's private use and enjoyment of land need only be substantial.

*Hall v. Phillips*, 231 Neb. 269, 278, 436 N.W.2d 139, 145 (1989).

■ In *Goeke v. National Farms, Inc.*, 245 Neb. 262, 270–71, 512 N.W.2d 626, 632 (1994), the Supreme Court said it had not found that it had ever defined "substantial interference" in the context of a suit to abate a nuisance, and then proceeded to state:

> [T]o justify the abatement of a claimed nuisance, the annoyance must be such as to cause actual physical discomfort to one of ordinary sensibilities. There is a

presumption, in the absence of evidence to the contrary, that a plaintiff in an action for abatement of a nuisance has ordinary sensibilities.

(Citations omitted.)

This definition would undoubtedly go to the extent and character of the harm under the Restatement, *supra*, § 827. The Thomsens' testimony regarding their physical discomfort, that is, their burning; watery eyes; scratchy throats; and coughing is enough, if believed, to establish physical discomfort.

"[A]n intentional invasion of another's interest in land exists when an actor purposefully causes the invasion, knows that the invasion is resulting from the actor's conduct, or knows that the invasion is substantially certain to result from the actor's conduct." *Hall v. Phillips*, 231 Neb. at 273, 436 N.W.2d at 143. Clearly, the record in the instant case reveals that the Greves knew that the invasion, or smoke, resulted from their conduct. The Greves admitted that they were told by the Thomsens of the smoke problem in August 1992. We therefore conclude, as a matter of law, that the Greves' conduct under the Thomsens' version of the evidence could create a nuisance.

### (b) Question of Fact: Did Greves' Conduct Create Nuisance?

The facts adduced by both parties are in direct conflict on the issue of whether the Greves have actually created a nuisance. The trial court heard and observed the witnesses and their manner of testifying, and it necessarily accepted the Thomsens' version of the facts to the extent necessary to find that a nuisance existed. In concluding that the Greves have created a nuisance by their conduct, we rely heavily upon the trial court's determination, but not entirely.

The fact that the chairman of the village board smelled smoke in the Thomsens' house on two occasions, when there was no source other than the Greves' wood–burning stove for that smell, is significant. The Pender chief of police was called as a witness by the Greves. He testified to seeing smoke down between the parties' homes and to similar observations about smoke from another home in Pender that burns wood. On one occasion, the police chief was called to the Thomsens' residence in regard to the smoke. He reported smelling the strong odor of

smoke in the Thomsens' home, but said that it smelled like wood burning. When the judge asked him if he found the odor in the Thomsens' home offensive, he said, "Well, it was just a heavy wood–burning," but he stated it did not smell of creosote. Another member of the village board went to the Thomsens' home, and he testified, "It smelled to me like they had a wood–burning stove in their house." He also testified "it stunk" outside of the house. He took the complaint seriously enough to contact the State Fire Marshal and others in an attempt to solve the problem. These witnesses characterized the Thomsens' smoke problem differently than the Thomsens and their witnesses, yet they support the Thomsens' claim to the extent that the Thomsens had a significant smoke odor in their house, and the source of that odor had to be outside.

The parties spent considerable time differentiating between the smell of burning wood and creosote. The record leaves the reader with the impression that the parties thought creosote originated from petroleum. The parties seem to approach the case as though a serious problem would not result if the Greves burned only clean, dry wood. Creosote is defined in part by Webster's Encyclopedic Unabridged Dictionary of the English Language 342 (1989) as "an oily liquid having a burning taste and a penetrating odor, obtained by the distillation of wood tar." Ron Greve testified that he found it necessary to clean his chimney monthly and that when he started burning wood he felt it advisable to make his chimney 30 inches higher, in an effort to decrease the number of times he needed to clean the chimney. Keith Thomsen testified that he saw "juices" running from around the Greves' chimney. Such matters do not establish that the smoke results from the wood the Greves burned, but they do tend to eliminate any supposition that a nuisance would be abated if they burned only clean, dry wood.

We conclude that the Greves have created a nuisance which the Thomsens are entitled to have abated; we therefore conclude that the Greves' cross–appeal should be dismissed.

## 2. DAMAGES

Having concluded that the smoke from the Greves' chimney constitutes a nuisance, we turn to the Thomsens' assignment of error that the trial court applied an improper measure of

damages and thus erred in not awarding them any damages. Specifically with regard to damages, the court order stated: "On the issue of damages, the Court finds that the plaintiff has failed to prove with specificity actual monetary loss or damage and therefore, [no damages] are ordered."

We first conclude that although this is mainly an equitable action, the trial court has the authority to award damages. In *Goeke v. National Farms, Inc.*, 245 Neb. 262, 512 N.W.2d 626 (1994), the Supreme Court held that in a nuisance action for equitable relief, the trial court may also award damages. In so doing, the court stated:

> When an equity court has properly acquired jurisdiction in a suit for equitable relief, it will make a complete adjudication of all matters properly presented and involved in the case and ordinarily will grant such relief, legal or equitable, as may be required and thus avoid unnecessary litigation. [Citations omitted.] Therefore, the district court could properly award damages for injuries that the plaintiffs proved were proximately caused by the nuisance created by the [defendants'] waste–treatment system. [Citations omitted.] Just because an action is equitable in nature, no different standards need be applied in adjudicating damages incidental to the main equitable relief sought.

*Id.* at 270, 512 N.W.2d at 632.

In determining the amount of damages to award, the Supreme Court has held that in addition to nominal damages, "[i]t is proper to take into consideration all the injuries and losses caused by the nuisance, such as the depreciation in the market or rental value of plaintiffs' property, and the discomfort, annoyance, and inconvenience in the use thereof." *Karpisek v. Cather & Sons Constr., Inc.*, 174 Neb. 234, 242, 117 N.W.2d 322, 327 (1962). The Thomsens did not prove any depreciation in the market or rental value of their property. Such damages would be special damages, and without specific proof for such special damages no award may be made.

General damages are " ' "such as the jury may give when the judge cannot point out any measure by which they are to be assessed except the opinion and judgment of a reasonable

man." . . .' " *Bank of Commerce v. Goos*, 39 Neb. 437, 446–47, 58 N.W. 84, 87 (1894) (quoting from legal authorities of that day). This rule has not changed. It is apparent that by the nature of things, a court cannot point out any measure of damages for discomfort, annoyance, or inconvenience. Obviously, the Thomsens cannot be expected to prove such damages with specificity. We therefore conclude that the trial court erred in not awarding damages.

As we stated previously, the Thomsens have suffered physical discomfort including scratchy throats; burning, watery eyes; and coughing and sleepless nights. They also have been forced to rearrange family gatherings and other social events at their home. Phyllis Thomsen testified that they have suffered from such inconveniences and annoyances approximately 140 times over the past 4 years. Under the above–cited authority, the Thomsens were only entitled to injunctive relief if they suffered substantial interference. As discussed above, the finding that the smoke created a nuisance results from a finding that the Thomsens suffered substantial discomfort.

The parties are entitled to a trial by this court de novo on the record on the amount of damages the Thomsens suffered. The evidence is sufficient for this court to determine damages as of the date of the district court trial. Thus, we find and determine that the Thomsens suffered damages in the sum of $4,000 as a result of the Greves' nuisance, from the date of its commencement to the date of the trial.

### 3. SCOPE OF INJUNCTION AND ABATEMENT

In its order, the trial court stated the Greves "shall abate this nuisance by burning only clean dry firewood and by raising the height of the chimney by three feet." The Thomsens contend that the court's order does nothing to abate the nuisance, for the Greves already claim to burn nothing but clean, dry firewood, and that there is no evidence showing that raising the chimney will do anything to abate the nuisance. An injunction against a nuisance is an extraordinary remedial process which is granted not as a matter of right but in the exercise of the discretion of the court, to be determined on consideration of all the circumstances of each case. *Cline v. Franklin Pork, Inc.*, 219 Neb. 234, 361 N.W.2d 566 (1985).

In *Cline*, the Supreme Court, in affirming the trial court's order enjoining the operation of the defendant's pig feeding and breeding facility, stated:

> "A court of equity will not usually enjoin the operation of a lawful business without regard to how serious may be the grievance caused thereby. *In the first instance*, at least, it will require the cause of the grievance to be corrected and will enjoin the conduct of the enterprise perpetually after it has been proven that no application of endeavor, science, or skill can effect a remedy where the owners cannot be induced to conduct it properly."

219 Neb. at 239, 361 N.W.2d at 571 (quoting *Cline v. Franklin Pork, Inc.*, 210 Neb. 238, 313 N.W.2d 667 (1981)).

Although the defendants in the instant case are not a business, we conclude that the principles and procedures found in these cases are just as applicable. The record before us is devoid of any evidence as to what will or will not abate the nuisance, if anything. Therefore, neither the trial court nor this court has the information necessary to make a final order on exactly how the nuisance can be abated. We therefore conclude that the trial court order should be amended to read that the Greves are ordered to abate the nuisance of smoke and odor emanating from their home to the Thomsens' adjacent home and that the Greves shall be allowed 30 days from the spreading of the mandate of the Court of Appeals to propose a reasonable means of abatement of the nuisance, which may be short of ceasing to heat their home by the existing system. The trial court shall allow the Greves such time as it finds reasonably necessary to abate the nuisance by such means that the trial court might find to have a reasonable likelihood of success, but if the Greves cannot abate the nuisance by the means proposed by them after reasonable time and efforts, then, and in that event, the court shall order the nuisance abated by permanently enjoining the Greves' use of their present wood–burning stove. Therefore, we remand the matter to the trial court with directions to hold further proceedings regarding a reasonable abatement plan.

## V. CONCLUSION

Therefore, in our de novo review, we hold that the Greves caused a nuisance, and we thus affirm that portion of the trial court's decree. We conclude that damages can properly be awarded and that the Thomsens did prove damages, and we thus modify that portion of the decree to award damages in the amount of $4,000. We modify the order of abatement as above provided.

AFFIRMED IN PART AS MODIFIED, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.