EARL P. AND KATHLEEN M. STEPHENS, HUSBAND AND WIFE, ET AL., APPELLANTS AND CROSS-APPELLEES, V. JAMES D. PILLEN ET AL., APPELLEES AND CROSS-APPELLANTS.

681 N.W.2d 59

Filed June 15, 2004. No. A-02-1360.

Shelley A. Horak, of Horak & Associates, and Patricia A. Knapp for appellants.

David A. Domina and Nora M. Kane, of Domina Law, P.C., for appellees.

IRWIN, Chief Judge, and SIEVERS and CASSEL, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

A group of 18 plaintiffs appeals from an order of the district court which granted the plaintiffs injunctive relief against the defendants for a private nuisance but denied monetary damages. The defendants cross-appeal from the court's order granting injunctive relief. We find that the district court was correct in finding a private nuisance and granting injunctive relief. We further find that the district court was correct in denying monetary damages to some of the plaintiffs. However, we also find that the district court was incorrect in denying monetary damages to some of the plaintiffs. Accordingly, we affirm in part, and in part reverse and remand with directions.

## II. BACKGROUND

On December 27, 2000, the group of 18 plaintiffs filed a petition against James D. Pillen and various other defendants alleging that four of the defendants' hog confinement operations, in Boone and Nance Counties, were being operated as integrated

parts of a single operation and constituted a private nuisance. The petition alleged that the hog confinement operations had been a nuisance since 1997, that the plaintiffs had been deprived of the normal use and enjoyment of their property, that the defendants had been notified of the plaintiffs' concerns but had failed to take action, and that the plaintiffs had no adequate remedy at law. The petition specifically sought injunctive relief, costs, and general damages to be determined at trial.

A bench trial was held in August 2002. Pillen testified about the various facilities at issue in this case, which he indicated are each classified as "5,000 sow units." Pillen testified that construction began on the Beaver Valley facility in Boone County in September 1996, that production began at the Northern Plains facility in Nance County in late 1997, that the Mount Echo facility in Boone County had been started shortly after the Northern Plains facility, and that production began at the Northern Nance facility in Nance County in late 1999. Pillen testified that animals were placed in the Beaver Valley facility by January 1997. Pillen further testified that he was aware in May 1997 of a complaint from Nebraska's Department of Environmental Quality (DEQ) concerning "the odor from [an] incinerator" constructed at the Beaver Valley facility, which complaint Pillen believed was a result of a complaint by one of the plaintiffs to the DEQ about the Beaver Valley facility. Pillen also testified that he had discussed an odor problem with some of the plaintiffs prior to September 29, 1997.

During the course of the trial, all 18 plaintiffs testified concerning how the defendants' hog confinement operations had impacted the plaintiffs' lives and use and enjoyment of their property. The testimony generally concerned the impact of odors from the hog confinement operations. The plaintiffs described the odors from these facilities as "unbearable"; as "overwhelmingly, a suffocating stench"; as a "musty hog shit smell"; as a "sewage odor"; as a "gas[-like] smell"; and as a smell that "chokes you." The plaintiffs further testified that the smell from the facilities is significant enough that it has impacted their daily lives; various plaintiffs testified to being forced to keep their houses closed up at all times, to not being able to spend time outside in their yards or gardens, to not being able to hang laundry

on a clothesline, and to not being able to spend time outside with children or grandchildren. One of the plaintiffs testified that she is a "prisoner in [her] house." More specific details of the particular plaintiffs' testimony will be set forth below in the discussion section of this opinion.

Pillen testified that the defendants have tried various procedures to diminish the odors emanating from the facilities and the waste lagoons at the facilities, including food additives, waste additives, and lagoon treatments. Pillen testified that despite the testimony of the plaintiffs to the contrary, he does not think that the hog confinement operations have changed the plaintiffs' quality of life or would ever disrupt someone's daily activities to such an extent that the operations should be changed.

On October 31, 2002, the district court entered an order. In the order, the court found that the plaintiffs all live within 2 miles of at least one of the four hog confinement facilities. The court found that all of the plaintiffs testified to having "almost daily encountered significant odors" from the hog confinement facilities. The court found that virtually all of the plaintiffs testified that they are compelled by the odors to use air conditioning rather than opening windows and that two of the plaintiffs testified that they have been forced to resort to sleeping in the basement of their home to avoid the odors. The court ultimately found that the plaintiffs had proven that the four hog confinement facilities constituted an intentional nuisance.

The court ordered the defendants to explore the utility of processes to mitigate the odors from the facilities and to implement such processes. The court stated that "within [a] twelve (12) month period, the Defendants are ordered to abate the nuisance or cease operating their facilities which are subject to this lawsuit." The court also found that the plaintiffs had suffered at least "some damage" as a result of the nuisance. Nonetheless, the court found that "none of the Plaintiffs [was] able to quantify any request for damages, [that] each generally indicated that [he or she] did not want damages," and that "the Plaintiffs ha[d] not adduced any evidence sufficient for the Court to award them specific damages." As a result, the court awarded no monetary damages to any of the plaintiffs. This appeal and cross-appeal followed.

## III. ASSIGNMENTS OF ERROR

On appeal, the plaintiffs have assigned as error only that the lower court erred in not awarding monetary damages. On cross-appeal, the defendants have made two assignments of error which challenge the lower court's finding that the plaintiffs proved that the hog confinement facilities constitute a nuisance.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

■ This is an appeal of a nuisance action for both injunctive relief and damages. In such a proceeding, the appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, and when credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *Thomsen v. Greve*, 4 Neb. App. 742, 550 N.W.2d 49 (1996). See, also, *Goeke v. National Farms, Inc.*, 245 Neb. 262, 512 N.W.2d 626 (1994).

### 2. PRELIMINARY NOTES

We initially note that the record in this case consists of six volumes of testimony spanning approximately 1,500 pages and 129 exhibits constituting another seven volumes. As noted, the plaintiffs' only assignment of error on appeal concerns the lower court's failure to award monetary damages. A review of the plaintiffs' brief in this appeal reveals that there is no reference in the brief to any of the testimony within those 1,500 pages which supports an award of damages. Instead, the plaintiffs have cited to factual findings in the transcript and, in their reply brief, have indicated that their "counsel began the exercise of compiling references to testimony supporting an award of damages [but it] became readily apparent rather quickly that references to testimony regarding damages consist essentially of references to the entire record." Reply brief for appellants at 6.

Neb. Ct. R. of Prac. 9D (rev. 2000) requires parties to annotate to the record each and every recitation of fact, whether in the statement of the facts or elsewhere in the brief. Suffice it to say that the entirety of the 1,500 pages of testimony does not

concern the issue of damages and that the plaintiffs' appellate counsel's failure to provide even examples of testimony which supports an award of damages made resolution of this case more time consuming and difficult than necessary. Further, we note that the fact that this case is subject to a de novo review does not alleviate the plaintiffs' appellate counsel's obligation to fulfill the court rules. This court's treatment of the issue of damages is more in spite of than because of the work of the plaintiffs' appellate counsel. In the future, greater care must be taken to comply with the court rules.

### 3. Cross-Appeal

We first address the issue raised on cross-appeal concerning whether the district court was correct in finding that the plaintiffs proved that the hog confinement facilities constitute a nuisance. The defendants assert that the district court erred in this regard and should have sustained the defendants' motion to dismiss. We disagree because we conclude that the evidence supports a finding that the defendants have known since 1997 that the hog confinement facilities have invaded the plaintiffs' private use and enjoyment of their land.

We first note that the defendants' brief on cross-appeal argues primarily that the plaintiffs failed to adduce sufficient evidence to establish negligence; the defendants assert that there was no expert testimony adduced to establish what duty was owed and no evidence to support a finding of a breach of any such duty. This appears to be the only basis for the defendants' cross-appeal and their assertions that the district court's finding of a nuisance and overruling of the defendants' motion to dismiss were incorrect. We find, however, as the plaintiffs assert in their reply brief, that this case proceeded under the theory of intentional nuisance, not negligent nuisance. That being the case, the bulk of the defendants' argument on cross-appeal is inapplicable to this case.

The appellate courts of Nebraska have adopted the law of nuisance as articulated in the Restatement (Second) of Torts (1979). See, *Bargmann v. Soll Oil Co.*, 253 Neb. 1018, 574 N.W.2d 478 (1998); *Hall v. Phillips*, 231 Neb. 269, 436 N.W.2d 139 (1989); *Kruger v. Shramek*, 5 Neb. App. 802, 565 N.W.2d 742 (1997); *Thomsen v. Greve*, 4 Neb. App. 742, 550 N.W.2d 49

(1996). A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of his or her land. *Hall v. Phillips, supra; Kruger v. Shramek, supra.* Section 822 of the Restatement, *supra*, provides that one is subject to liability for a private nuisance if, but only if, his or her conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land and the invasion is intentional and unreasonable. See, *Kruger v. Shramek, supra; Thomsen v. Greve, supra.*

An intentional invasion of another's interest in the private use and enjoyment of land exists when an actor purposefully causes the invasion, knows that the invasion is resulting from the actor's conduct, or knows that the invasion is substantially certain to result from the actor's conduct. See, *Hall v. Phillips, supra; Thomsen v. Greve, supra.* As noted in *Hall v. Phillips, supra*, the Restatement, *supra*, § 825, comment *c.* at 118, provides in part:

> *c. Meaning of "intentional invasion."* To be "intentional," an invasion of another's interest in the use and enjoyment of land, or of the public right, need not be inspired by malice or ill will on the actor's part toward the other. An invasion so inspired is intentional, but so is an invasion that the actor knowingly causes in the pursuit of a laudable enterprise without any desire to cause harm. It is the knowledge that the actor has at the time he acts or fails to act that determines whether the invasion resulting from his conduct is intentional or unintentional.

In this case, our review of the record indicates that the defendants knew, at least as early as September 1997 and perhaps as early as May 1997, that the operation of these facilities was causing an interference with the plaintiffs' enjoyment of their land. Several of the plaintiffs testified that they complained to the defendants about the odor from the facilities. Pillen testified that he discussed the odor with some of the plaintiffs and wrote them a letter on the subject in September 1997. Pillen also testified that he had received complaints about other facilities in the past. Further, as discussed more fully below, the evidence indicates that the interference with the plaintiffs' enjoyment of their land was substantial and unreasonable.

The defendants' arguments on cross-appeal are inapplicable to this case because, since the case was presented to the trial

court under an allegation of intentional nuisance, there was no requirement to demonstrate a duty or breach of duty. Further, the record adequately supports the district court's finding that the plaintiffs proved that the defendants' operation of these facilities constituted a knowing and intentional nuisance. As such, the assertions of the cross-appeal are meritless.

### 4. APPEAL

The issue raised in the plaintiffs' appeal is whether the record supported an award of monetary damages, i.e., whether the district court erred in finding that it did not. Our review of the record indicates that many of the plaintiffs did present sufficient evidence to entitle them to an award of monetary damages. Some plaintiffs did not present sufficient evidence, and still other plaintiffs presented evidence which would have supported an award of monetary damages but affirmatively testified that they did not want any monetary damages.

### (a) Sufficient Evidence

We find that 11 of the plaintiffs presented sufficient evidence to support an award of monetary damages. Those 11 plaintiffs are Earl P. Stephens, Kathleen M. Stephens, Bradley E. Stephens, Cindy Stephens, Wendell Francis, Arletta Francis, James McIntosh, Anna McIntosh, Dorian Kaspar, Daniel S. Kaspar, and Wanda Loseke. Each of these plaintiffs presented testimony that he or she has suffered significant discomfort, annoyance, and inconvenience in the use of his or her property.

We note that although this is mainly an equitable action, the trial court has the authority to award damages. See *Thomsen v. Greve,* 4 Neb. App. 742, 550 N.W.2d 49 (1996). When an equity court has properly acquired jurisdiction in a suit for equitable relief, it has jurisdiction to make a complete adjudication of all matters properly presented and involved in the case, including awarding monetary damages. See, *Goeke v. National Farms, Inc.,* 245 Neb. 262, 512 N.W.2d 626 (1994); *Thomsen v. Greve, supra.* As such, there is no dispute in this case that the district court had the authority to award monetary damages.

Our review of the district court's order leads us to conclude that the district court mistakenly applied rules applicable to special damages to the plaintiffs' request for general damages. A

review of the defendants' brief on cross-appeal indicates a similar misunderstanding of the law governing damages. Although damages such as depreciation in market or rental value of property, medical expenses, and psychological expenses may be recoverable in a nuisance action, such damages would be special damages and would require specific proof to be awarded. See *Thomsen v. Greve, supra.*

General damages, however, do not require specific proof. General damages are such as the jury may give when the judge cannot point to any measure by which they are to be assessed except the opinion and judgment of a reasonable person. *Id.* By definition, the very nature of general damages is such that a court cannot point out any measure of damages for things such as discomfort, annoyance, or inconvenience. See *id.* Nonetheless, such damages are recoverable in a nuisance action. See *id.*

The 11 plaintiffs listed above all presented sufficient testimony to establish significant damage to their way of life and their quality of life as a result of the nuisance in this case. They variously testified about significant interferences with their abilities to use and enjoy their homes and yards, including hanging laundry on the clothesline, spending time outside with children and grandchildren, opening their windows to enjoy fresh air, and generally enjoying time outside. They variously testified that they are forced to make sure that windows and doors to their homes are closed at all times so that the odor does not invade the inside of their homes. Some of them testified that they had air-conditioning and used it to keep their homes cool when the windows were shut. Kathleen Stephens identified herself as a "prisoner" in her own home and testified that she could not even eat things grown in her own garden because they had been "out in that smell" and thus were unappetizing as a result of the hog confinement facilities. Earl Stephens testified that he and Kathleen Stephens were considering moving and leaving land that had been in his family for years. James McIntosh testified that as a result of the odors, his family no longer plans any outdoor activities. Wanda Loseke testified that she has to put "mentholatum" in her nose to be able to tolerate sitting on her porch to read. The 11 plaintiffs listed above all presented sufficient

similar testimony to establish that they have suffered compensable general damages as a result of the nuisance.

Although many of the 11 plaintiffs listed above testified that they could not put a specific monetary value on these damages, none of them testified that he or she actually did not want compensation for such damages. We specifically disagree with the defendants' assertions in their brief on cross-appeal, witness by witness, that these 11 plaintiffs were not asked about or did not testify about general damages. Our review of the record indicates that although they were not asked about special damages, they were asked and did testify extensively about general damages. The defendants' assertions to the contrary are inaccurate and border on being misleading. The plaintiffs' petition specifically requested general damages for all of the plaintiffs, and these 11 plaintiffs presented testimony which entitled them to such an award. As a result, we reverse the order of the district court denying monetary damages to these 11 plaintiffs and remand the matter to the district court with directions to award appropriate monetary damages to each of them, considering the extent of interference demonstrated by their testimony.

### (b) Insufficient Evidence

In contrast to our findings regarding the 11 plaintiffs listed above, we find that 2 of the plaintiffs specifically did not present sufficient evidence to entitle them to a monetary damages award. These two plaintiffs are Delmar Keehn and Stanley A. Czarnik. Because these two plaintiffs did not present sufficient evidence of discomfort, annoyance, or inconvenience, we affirm the district court's denial of damages to them.

Keehn testified generally that his property was on the fringe of the properties that experienced odor from the hog confinement facilities. He did not testify about any significant impact on his daily activities, way of life, or quality of life. He testified that he sometimes smells one of the facilities, depending on the wind, and that the facility "stinks." He specifically testified, however, that it does not affect the way he moves around his farm at all.

Similarly, Czarnik testified generally that there is strong odor from the facilities, but did not testify about any significant impact on his daily activities, way of life, or quality of life. He

specifically testified that the only change in his life as a result of the facilities was that traffic sometimes woke him up earlier in the morning than usual.

We find insufficient evidence in the testimony of Keehn and Czarnik to support an award of monetary damages. Consequently, we find the appeal concerning them to be without merit and affirm the district court's denial of damages to them.

### (c) Waiver

Finally, we find that five of the plaintiffs presented sufficient evidence to entitle them to an award of damages but specifically testified that they did not want the district court to award them damages. Those five plaintiffs are Donald C. Loseke, Bill E. Smith, Janice Smith, Beverly E. Kemper, and Neal E. Kemper. As a result, although there was sufficient evidence to support an award of monetary damages to them, we affirm the district court's decision not to award them damages. These five plaintiffs are the only ones regarding whom the district court's and the defendants' assertions that the plaintiffs specifically testified that they did not seek monetary damages are accurate.

Although Donald Loseke testified that he used to enjoy working outdoors and in his shop and that he now has to endure a "musty hog shit smell" to do so, he also indicated that he did not want monetary damages. On cross-examination, he was asked, "So you're not asking for [a] money judgment at all, are you?" He answered, "No." There was little further discussion of his desire, or lack thereof, to receive a monetary judgment, and this testimony is sufficient to support the conclusion that he specifically testified that he did not want monetary damages.

Similarly, Bill Smith testified that the odor from the facilities has changed the way he enjoys his property and that his family can no longer hang laundry out on the clothesline, picnic outside, enjoy working out in the yard, or open the windows of the family home. He specifically testified that he has lost the freedom to do what he wants on his property when he wants to. However, on cross-examination, he was asked, "You don't want any money, do you?" He answered, "No, I don't." On redirect examination, he testified that his goal was "to get the air quality back to where it was."

Bill Smith's wife, Janice Smith, also testified that she has suffered damages as a result of the nuisance. She testified that she used to spend a great deal of time outdoors in her garden and with her children, that she used to enjoy yardwork and being outside, and that the nuisance has changed her ability to enjoy those things. She further testified that she can no longer leave laundry on the clothesline or open the windows of her house. Like Bill Smith, however, she specifically testified that she was not requesting an award of money.

Beverly Kemper also presented substantial testimony that would have supported an award of damages. She testified that her grandchildren visit her less often because of the smell; that although she and her husband, Neal Kemper, do not have air-conditioning, they still keep their house closed up in the summertime; that she has stopped working outside of the house because of the nuisance; and that she and Neal Kemper sometimes sleep in the basement of their house to avoid the odors. On cross-examination, she was asked, "[A]re you asking for money here[?]" She replied, "No, I'm not." There was little further discussion of her desire, or lack thereof, to receive a monetary judgment, and this testimony is sufficient to support the conclusion that she specifically testified that she did not want monetary damages.

Finally, Neal Kemper provided similar testimony. He testified that the nuisance has impacted his sleep, laundry, and meals. He characterized the nuisance's effect upon him as a loss of freedom and likened that loss to "having to go to jail" because of the odors from the hog confinement facilities. However, on cross-examination, he was asked, "You're not asking for a money judgment or award, are you?" He replied, "No, I'm not." As with the other plaintiffs' questioning at trial, there was little further discussion of his desire, or lack thereof, to receive a monetary judgment, and this testimony is sufficient to support the conclusion that he specifically testified that he did not want monetary damages.

These five plaintiffs presented sufficient testimony to support an award of general damages. Nonetheless, they each specifically testified unambiguously that they did not desire to receive a monetary damages award. Consequently, we find the appeal concerning

damages to be without merit regarding these five plaintiffs and affirm the district court's denial of damages to them.

## V. CONCLUSION

The defendants' cross-appeal is meritless. Because this case was presented as an intentional nuisance action, the lack of evidence concerning duty and breach has no bearing on the sufficiency of the evidence to support the court's finding of nuisance. There was sufficient evidence to support the court's finding of a nuisance, and the district court's order is affirmed in that respect. With respect to damages, we find that each member of the group of 11 plaintiffs listed above presented sufficient evidence to support an award of general damages, and as to those plaintiffs, the district court's denial of damages is reversed and the matter remanded with directions to enter an appropriate damages award. With respect to the remaining seven plaintiffs, the district court's order denying damages is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.